[Cite as *State v. Blachowski*, 2019-Ohio-2331.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO                           :

    Plaintiff-Appellee,          :
                                                        No. 107616
    v.                                    :

SCOTT BLACHOWSKI,                :

    Defendant-Appellant.      :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 13, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-626046-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jennifer A. Driscoll and Debora Brewer, Assistant Prosecuting Attorneys, *for appellee.*

John T. Forristal, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Scott Blachowski, appeals from his convictions for rape, gross sexual imposition, and endangering children. Finding no merit to the appeal, we affirm.

## I. Background

{¶ 2} In February 2018, a Cuyahoga County Grand Jury charged Blachowski in a sixteen-count indictment with six counts of rape in violation of R.C. 2907.02(A)(1)(b); six counts of gross sexual imposition in violation of R.C. 2941.148(A); and four counts of endangering children in violation of R.C. 2919.22(B)(1). All of the rape and gross sexual imposition counts carried a sexually violent predator specification. Blachowski pleaded not guilty, and the matter proceeded to a jury trial.

{¶ 3} P.T., the great-grandmother of E.T., the victim, testified that she obtained custody of E.T.'s mother, K.T., when K.T. was nine years old. She testified that K.T. gave birth to E.T. when she was 16 years old, but only a few weeks after giving birth, K.T. "started becoming wild again, drinking, taking marijuana," and did not want to care for E.T. P.T. said that K.T. and Blachowski lived with her but had a volatile relationship marred by drinking, drug use, and domestic violence.

{¶ 4} Blachowski and K.T. moved out of P.T.'s home when E.T. was one year old, and P.T. continued to care for the child. K.T. regained custody of E.T. when he was a toddler, however, and E.T. moved in with her and Blachowski. P.T. testified that K.T. and Blachowski continued to drink "quite a bit," and K.T. used marijuana "all the time."

{¶ 5} E.T., who was ten years old at the time of trial, testified that he lived with his mom, Blachowski, and two siblings. He said that he saw his mom and dad

"drinking all the time," and he often saw his dad hitting his mom; one time he saw Blachowski put a knife to K.T.'s stomach.

{¶ 6} He said he, his mom, and dad all slept in the same bed, and Blachowski began abusing him when he was four or five years old. E.T. said that he told his mom what Blachowski had done after the first time Blachowski touched his penis, but Blachowski told K.T. "he thought it was just the sheets," so she "didn't do anything." E.T. testified that he knew Blachowski's explanation was a lie because, he said, "I felt it. I seen it. It happened to me. I know it wasn't a dream."

{¶ 7} E.T. said that Blachowski sexually abused him repeatedly through the years. He said the incidents occurred at night in bed while K.T. was sleeping, and he was afraid to wake her up. He said that Blachowski touched his penis, and forced him to touch Blachowski's penis. E.T. testified further that Blachowski would put his penis in E.T.'s mouth, and he was forced to put his penis in Blachowski's mouth. E.T. testified that Blachowski once made him insert his penis into his four-year-old sister's bottom; he said he specifically remembered the incident because the family had just moved back from Arizona when it happened.

{¶ 8} E.T. testified that two days before he told his grandmother what had been going on, Blachowski forced him to watch pornography and then "the same thing as always" happened; "he made me suck his penis. He sucked mine."

{¶ 9} E.T. testified that he loved Blachowski, and that Blachowski "tried to be a good dad." He said he was "confused" when the sexual abuse happened because he "kind of knew it was bad. But my dad did it."

{¶ 10} P.T. testified that E.T. and his siblings spent time at her house almost every weekend through the years. She said that when E.T. was nine years old, she realized that he seemed especially angry and unhappy, so she told him that he could talk to her if something was bothering him. P.T. said that E.T. then told her that Blachowski had touched him "in his private area." P.T. testified that E.T. told her that K.T. was sleeping in the bed while it was happening, and P.T. "just took that to mean she had been drinking." P.T. testified further that E.T. told her that K.T. had believed Blachowski's explanation that it was "just the sheet" when he had told her years ago what had happened, and that he asked her to tell K.T. what had been going on.

{¶ 11} P.T. testified that E.T. moved in with her shortly after Blachowski was arrested, and initially seemed happy to live with her. P.T. said that a few weeks after he moved in, however, two incidents occurred that caused him to be hospitalized twice for psychiatric treatment. P.T. said that E.T. now takes medication for depression and receives counseling.

{¶ 12} Cleveland Police Detective Richard Durst testified that he investigated the case. He said that he interviewed E.T., who disclosed sexual abuse by Blachowski. He said that E.T. seemed "sad" during the interview, but gave detailed disclosures about what had happened. Detective Durst testified that he also interviewed K.T., and then, after consulting with the prosecutor, issued an arrest warrant for Blachowski.

{¶ 13} Detective Durst testified that he did not obtain any physical evidence in the case, but explained that no DNA evidence was available due to E.T.'s delayed disclosure. He said that he did not interview E.T.'s sister, so he was unable to corroborate E.T.'s allegation about her, but he said that K.T. had confirmed that the family had moved from a rear apartment to a front apartment, thus corroborating E.T.'s statement to him that the incidents had happened in two apartments. On cross-examination, Detective Durst admitted that he did not look at Blachowski's telephone, even though it could have corroborated E.T.'s allegation that Blachowski made him watch pornography.

{¶ 14} Blachowski testified in his own defense. He admitted that he cheated on K.T. and was physically abusive toward her, and that he had been convicted of domestic abuse. He said that E.T. "got it right" that E.T. slept in the bed with Blachowski and K.T., that Blachowski beat K.T., and that Blachowski whipped E.T. Blachowski denied, however, that he ever showed pornography to E.T. or did anything of a sexual nature with him.

{¶ 15} The state dismissed two counts of rape (Counts 3 and 11), and one count of gross sexual imposition (Count 14). The jury subsequently found Blachowski guilty of all remaining counts — four counts of rape, five counts of gross sexual imposition, and four counts of endangering children. The court found him guilty of the sexually violent predator specifications attached to the rape and gross sexual imposition charges.

{¶ 16} The court sentenced Blachowski to life in prison without the possibility of parole on the rape counts; concurrent with five years to life on the gross sexual imposition counts; eight years on Counts 7 and 15 (felony endangering children); and six months with credit for time served on Counts 8 and 16 (misdemeanor endangering children). This appeal followed.

## II. Law and Analysis

## A. Improper Juror Communication

{¶ 17} After E.T. testified, the court took a lunch recess. After the break, the prosecutor notified the trial court of the following:

> It came to our attention over the lunch hour that the defendant's stepmother who has been in the back of the courtroom through the entire proceedings had made contact with the victim's mother, K.T., and she had known that K.T. was subpoenaed in and kept separate as witnesses cannot talk about the proceedings as they're going on.
>
> They were on the fourth floor of the Justice Center building in the green elevator well and K.F. was giving K.T. a play by play of everything that has been going on [in] the courtroom, talking about the testimony, talking about pleas, talking about Mr. Blachowski's looks when he said he wouldn't take the plea. They were talking very loudly. I could hear everything loudly. I was in the red elevator well. My co-counsel, Deb Brewer, was also in the red elevator well also watching as jurors on this case were walking by.
>
> I obviously cannot attest as to whether a juror heard anything but we are concerned that a juror may have heard something and we're also concerned about the tainting of our witness. (Tr. 295-296.)

{¶ 18} In his first assignment of error, Blachowski contends that the trial court committed reversible error in not declaring a mistrial in light of the prosecutor's advisement. He further contends that the hearing about the alleged improper juror contact was inadequate because, at a minimum, the trial court

should have interviewed each juror individually when it learned of the improper communication. We disagree.

{¶ 19} First, Blachowski did not ask for a mistrial in the trial court or object to the court's decision not to declare a mistrial. Likewise, he did not object to the trial court's handling of the hearing regarding the alleged improper juror communication, nor did he ask the court to question each juror individually. It is well-settled that failure to raise a claim of error at trial waives all but plain error on appeal. *State v. Watkins*, 8th Dist. Cuyahoga No. 77051, 2000 Ohio App. LEXIS, * 17 (Sept. 7, 2000).

{¶ 20} Plain error is an obvious error or defect in the trial court proceeding that affects a substantial right. *State v. Gray*, 8th Dist. Cuyahoga No. 92303, 2010-Ohio-240, ¶ 17, citing *State v. Long*, 53 Ohio St.2d 91, 94, 372 N.E.2d 804 (1978). An alleged error is plain error only if the error is obvious and but for the error, the outcome of the trial clearly would have been otherwise. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 108. We take notice of plain error with the "utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Long* at paragraph three of the syllabus. The burden of demonstrating plain error is on the party asserting the error. *State v. McFeeture*, 2015-Ohio-1814, 36 N.E.3d 689, ¶ 84 (8th Dist.). Blachowski has not demonstrated any error, plain or otherwise.

{¶ 21} When a trial court learns of an improper communication with a juror, it must hold a hearing to determine whether the communication biased the juror.

*State v. Phillips*, 74 Ohio St.3d 72, 88, 66 N.E.2d 643 (1995). It is the accused's burden to show that the improper communication biased the juror and that the accused was prejudiced by the bias. *State v. Keith*, 79 Ohio St.3d 514, 527, 684 N.E.2d 47 (1997). Trial courts are granted broad discretion in determining whether to declare a mistrial or replace an affected juror, and we review for an abuse of that discretion. *Phillips* at 89; *State v. Worwell*, 8th Dist. Cuyahoga No. 80871, 2002-Ohio-6637, ¶ 7.

{¶ 22} Here, upon being informed of the potential juror communication, the judge questioned K.F., who acknowledged that she knew that K.T. was a potential witness at trial, but insisted that she "really didn't think together" that talking with her about the trial was a problem. The judge then brought in the jury and questioned it as follows:

> Welcome back, ladies and gentleman.
>
> Before the state calls the next witness, every once in a while we're going to check in with you after a recess when you've been off the floor if you've heard anything about the case, you know, anything in violation of the admonitions that I give you when you're leaving. So if you heard anybody talking in the hallway, if you caught an elevator with people talking trial strategy, anything like that, does anyone have anything to report from the lunch hour?

{¶ 23} When no juror responded that he or she had heard anything improper, the judge indicated that the state could call its next witness.

{¶ 24} Blachowski contends that this hearing was insufficient because, at the very least, the judge should have questioned each juror individually regarding

whether he or she had heard anything during the break. He contends that the court's failure to do so was an abuse of discretion.

{¶ 25} We find that the hearing was adequate, and that the trial court did not abuse its discretion by not interviewing each juror individually. The scope of voir dire used to investigate for allegations of improper communication with members of the jury is within the trial court's discretion. *State v. Sanders*, 92 Ohio St.3d 245, 252, 750 N.E.2d 90 (2001). Here, the judge directed her question to all the jurors, and, when no one spoke up, she could reasonably assume that no juror was affected by the alleged improper communication. Thus, the court did not abuse its discretion by stopping its questioning at that point. *Sanders* at *id.* (no abuse of discretion in not interrogating each juror individually where the court directed a question to all jurors and no one responded). Furthermore, because the trial court determined that no juror was affected by the alleged improper communication, the court did not abuse its discretion in continuing on with the trial and not declaring a mistrial.

{¶ 26} The first assignment of error is therefore overruled.

### B. Opinion Testimony

{¶ 27} During redirect examination of Detective Durst, the following colloquy occurred:

> Q. And just one follow-up question. He asked you all about your interview techniques and your interrogation techniques. When you are interviewing witnesses, what is your goal? What are you trying to determine?
>
> A. What am I trying to determine?

Q. Are you interrogating them? What is your purpose of interviewing them?

A. My purpose is — I would like them to tell the truth.

(Tr. 363.)

{¶ 28} In his second assignment of error, Blachowski contends that this testimony, coupled with Detective Durst's testimony that he issued an arrest warrant for Blachowski after he interviewed E.T. and K.T., implicitly conveyed to the jury that the detective thought E.T. was telling the truth, and was therefore reversible error.

{¶ 29} Initially, we note that Blachowski raised no objection to Detective Durst's testimony and therefore has waived all but plain error on appeal.

{¶ 30} In *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989), syllabus, the Ohio Supreme Court held that "an expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." This is because the trier of fact, and not the expert, has the burden of assessing the credibility and veracity of witnesses. *Id.* at 128-129.

{¶ 31} However, "only statements directly supporting the veracity of a child witness are prohibited under *Boston*." *State v. Cashin*, 10th Dist. Franklin No. 09A-367, 2009-Ohio-6419, ¶ 20, citing *State v. Rosas*, 2d Dist. Montgomery No. 22424, 2009-Ohio-1404. As explained in *Rosas*:

> The rules of evidence permit an expert to offer an opinion on an ultimate issue, which the jury was empaneled to decide. Evid.R. 704 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact.") As [*State v.*] *Stowers*, [81 Ohio

St.3d 260, 690 N.E.2d 881 (1998)] taught, this includes a psychologist's expert opinion on whether a particular child was sexually abused. *Stowers* at 261. What an expert may not do is offer a direct opinion on whether a child is telling the truth. *State v. Boston*, 46 Ohio St.3d 108, 545 N.E.2d 1220 (1989), syllabus (an "expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant"). There is a distinction "between expert testimony that a child witness is telling the truth," on the one hand, and on the other hand, "evidence which bolsters a child's credibility insofar as it supports the prosecution's efforts to prove that a child has been abused." *Stowers* at 262. Expert testimony is admissible as to the latter. This is evidence that provides "additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity*." Id.* Such testimony "does not usurp the role of the jury, but rather gives information to a jury which helps it make an educated determination." *Id.* at 263.

*Rosas* at ¶ 42.

{¶ 32} Thus, in *Rosas*, the Second District held that the testimony of a child psychologist was within permissible bounds where the psychologist testified about the behavioral characteristics of sexually abused children, compared those characteristics to the victim's behavior, and concluded that she had been sexually abused. *Rosas* at ¶ 43. The court found that the trial court did not abuse its discretion in allowing the testimony because the psychologist never directly testified that she believed what the victim had told her or that she thought the victim was a credible witness. *Id.*

{¶ 33} Likewise, in *Cashin*, the Tenth District found that the testimony of a medical social worker who interviewed the victim did not violate *Boston* where the social worker testified about the substance of statements made by the victim during the interview and about the victim's general demeanor, but did not offer any

testimony expressing an opinion about whether the victim's statements were true. *Id.* at ¶ 20. The court found that "[t]his type of indirect bolstering of a victim's credibility is not the same as the direct rendering of an opinion as to the victim's veracity that was involved in *Boston.*" *Id.*

{¶ 34} Here, Detective Durst never directly testified that he thought E.T. was telling the truth, nor even that he thought E.T. was sexually abused. Thus, his testimony was not prohibited by *Boston.* Furthermore, even if we were to conclude that his testimony somehow indirectly bolstered E.T.'s credibility, as discussed above, only testimony directly commenting on the child's veracity is improper; testimony indirectly bolstering a child's credibility is permissible. Accordingly, the detective's testimony was permissible, and we find no plain error in its admission.

{¶ 35} The second assignment of error is overruled.

### C. Manifest Weight of the Evidence

{¶ 36} In his third assignment of error, Blachowski contends that his convictions are against the manifest weight of the evidence.

{¶ 37} A manifest weight challenge questions whether the state met its burden of persuasion. *State v. Freeman*, 8th Dist. Cuyahoga No. 106374, 2018-Ohio-3587, ¶ 18. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must

be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). An appellate court will reverse a conviction as against the manifest weight of the evidence only in the most exceptional case in which the evidence weighs heavily against the conviction. *Id.*

{¶ 38} Blachowski contends that his conviction was against the manifest weight of the evidence because E.T.'s testimony was not credible beyond a reasonable doubt. He points out that E.T. told the social worker that Blachowski made him touch his mother, but admitted at trial that allegation was not true. He contends that E.T.'s testimony that he told his mother about Blachowski three times over six years was not credible because P.T. testified that E.T. told her of only one instance when he told K.T. of the abuse. He further contends that E.T.'s testimony that Blachowski "raped me every night" could not be true because E.T. spent many nights at P.T.'s house. Blachowski also asserts that E.T.'s testimony seemed "coached" because he used "technical and legal words that a ten-year-old would not normally use," such as "raped," "abusive," "sexually abused," and "molested." He also contends that E.T. admitted that he learned from a news story that it was wrong to sexually abuse a child, and that he talked about sex with his friend D., admissions that Blachowski contends suggest that E.T. fabricated his testimony.

{¶ 39} Blachowski asserts that in addition to E.T.'s "problematic" testimony, (1) there was no physical evidence that linked him to the offenses; (2) Detective Durst's investigation was incomplete because he did not interview E.T.'s sister and did not check Blachowski's telephone for evidence of child pornography; (3) the

state did not provide an expert witness to attribute E.T.'s outbursts, psychiatric hospitalizations, medications, and counselling to sexual abuse, and (4) P.T. was not qualified to testify about a correlation between the abuse and E.T.'s behavior and psychiatric breakdowns. Consequently, he contends that his convictions were against the manifest weight of the evidence.

{¶ 40} Despite Blachowski's arguments, this is not the "exceptional case" in which the evidence weighs heavily against the convictions. Determinations regarding the credibility of witnesses and the weight given to the evidence are primarily matters for the trier of fact to decide. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able to view the witnesses and observe their demeanor and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. "The jury may take note of any inconsistencies and resolve them accordingly, 'believing all, part, or none of a witness's testimony.'" *State v. Hill*, 8th Dist. Cuyahoga No. 98366, 2013-Ohio-578, ¶ 33, quoting *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958.

{¶ 41} Moreover, Ohio courts "have consistently held that a rape victim's testimony, if believed, is sufficient to support a rape conviction. 'There is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction.'" *State v. Williams*, 8th Dist. Cuyahoga No. 92714, 2010-Ohio-70, ¶ 32, quoting *State v. Lewis*, 70 Ohio App.3d 624, 638, 591 N.E.2d 854 (4th Dist. 1990).

{¶ 42} Here, the jury heard E.T.'s testimony regarding the abuse, and further, his assertion that Blachowski's denial that he knowingly touched E.T. was a lie. The jury also heard Blachowski's testimony denying that he sexually abused E.T., but admitting that E.T. "got it right" about other disturbing things that happened in the home. Further, the jury heard Detective Durst explain that there was no physical evidence to support the allegations because E.T. delayed disclosing the abuse for several days after it happened for the last time, but that the detective's interview with K.T. corroborated E.T.'s statement that the abuse happened in two different apartments.

{¶ 43} A careful review of the record shows that E.T.'s testimony, if believed, supports Blachowski's convictions for rape, gross sexual imposition, and child endangering. The jury, as the trier of fact, was in the best position to believe or not believe E.T.'s allegations and to resolve any inconsistencies in the evidence. Likewise, the jury could believe or not believe Blachowski's testimony denying the abuse. The jury chose to believe E.T. and not Blachowski, and on this record, we cannot conclude that the jury lost its way in convicting him.

{¶ 44} After reviewing the entire record and considering the credibility of the witnesses, we do not find that the trier of fact clearly lost its way and created a manifest miscarriage of justice in finding Blachowski guilty of rape, gross sexual imposition, and endangering children. Accordingly, the third assignment of error is overruled.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

MARY EILEEN KILBANE, A.J., and
LARRY A. JONES, SR., J., CONCUR