[Cite as *State v. Trujillo*, 2023-Ohio-4068.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                       No. 112442

    v.                            :

JOSE TRUJILLO,                          :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** November 9, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-671261-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Kevin Bringman, Assistant Prosecuting
Attorney, *for appellee.*

Susan J. Moran, *for appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant Jose Trujillo appeals from his judgment of conviction, which was rendered after a jury found him guilty of 21 counts relative to sexual abuse of four victims — W.C., A.O., J.T., and A.C. — over an approximate 12-

year period. After a careful review of the facts and pertinent law, we affirm Trujillo's convictions and remand for nunc pro tunc correction of the sentencing entry.

**Procedural History**

{¶ 2} Trujillo was indicted in June 2022 in a 31-count indictment. The charges consisted of rape, kidnapping, pandering obscenity involving a minor, gross sexual imposition, and sexual battery. There were also seven sexually violent predator specifications; Trujillo waived his right to a jury on the specifications and they were tried to the bench. The case was randomly assigned to a common pleas judge, and she presided over the case through, and including, the trial.

{¶ 3} After the case was pretried, the state offered Trujillo the following plea deal: enter a guilty plea to eight counts, be designated a Tier III sex offender, and recommend an agreed sentence of 20 to 25 years to the trial court. Trujillo declined the plea deal, and the case proceeded to trial.

{¶ 4} The state presented numerous witnesses, including the four victims. At the close of the state's case, the defense made a Crim.R. 29 motion for judgment of acquittal. As a result of discussion on the defense's motion, the state dismissed five counts and the trial court dismissed three counts.[1] Two witnesses testified for the defense, including Trujillo, and at the close of its case it renewed its Crim.R. 29 motion for judgment of acquittal. The motion was denied.

---

[1] The dismissed counts were two counts of rape relative to victim A.O.; the sole count of pandering obscenity involving a minor; two counts of gross sexual imposition relative to victim W.C.; two counts of rape relative to W.C.; and one count of kidnapping relative to W.C.

{¶ 5} The case was submitted to the jury on the remaining 23 counts. After its deliberations, the jury found Trujillo guilty on 21 counts and not guilty on two counts. The trial court found Trujillo not guilty on the seven sexually violent predator specifications.

{¶ 6} At the time of sentencing, which occurred in January 2023, the original judge was in a different seat on the common pleas bench and a new judge had taken over the original judge's docket and, thus, Trujillo was sentenced by the new judge.

{¶ 7} The state filed a sentencing memorandum in which it recommended that Trujillo serve the rest of his life in prison. The state's harshest recommendation was relative to Count 6, rape against victim A.O.; on that count the state recommended life with the possibility of parole after 15 years. The state also recommended that all counts run consecutively.

{¶ 8} The trial court sentenced Trujillo to life without parole on Count 6, rape of victim A.O., and maximum, consecutive sentences on the remaining counts.

**Trial Testimony**

{¶ 9} The trial testimony established that the four victims were between the ages of five and 15 during the commission of the crimes, which spanned an approximate 12-year period. Two of the victims — A.O. and W.C. — were Trujillo's stepdaughters; their mother is Trujillo's ex-wife (referred to as "mother" or "ex-wife"). Another victim — J.T.— is Trujillo's biological daughter; J.T. also shares the same mother as A.O. and W.C. The final victim — A.C. — is Trujillo's former sister-in-law (ex-wife/mother's sister; maternal aunt to other victims).

**Testimony Relative to Victim W.C., Trujillo's Stepdaughter**

{¶ 10} W.C., who was born in 1994, testified that her mother and her biological father's relationship ended when she was young. Soon after the end of her parents' relationship, Trujillo moved in with W.C.'s family in a Wade Avenue house. A.O. lived in the house as well. W.C., A.O., their mother, and Trujillo resided on the second floor of the house, while other family members (her maternal grandparents and maternal aunts and uncles) occupied the first floor of the house.

{¶ 11} W.C. testified to sexual encounters she had with Trujillo while living at the Wade Avenue house. The first incident that was the subject of the within indictment occurred when W.C. was five years old. Trujillo told W.C. to come into her mother's room and take her clothes off. According to W.C., Trujillo touched her inner thighs, licked her vagina, and asked her if she liked it. W.C. testified she was scared and did not know how to respond to Trujillo.

{¶ 12} W.C. recounted another incident that occurred in the Wade Avenue house. W.C. testified that Trujillo was in the living room and a pornographic program was on the television. Trujillo bent W.C. over the couch and vaginally raped her. W.C. testified that it hurt and that she was scared because Trujillo told her not to say anything to anyone or he would hurt her.

{¶ 13} W.C. went on to testify that she and her family moved to a house near West 18th Street and Starkweather. She recalled that while living at that house, sometime around June 2002, Trujillo raped her again. W.C. told her biological father about the incident. The father took W.C. to the hospital and filed a complaint

with the police. W.C. did not tell the police about the other incidents at that time. Neither the hospital visit nor the police complaint generated further investigation. W.C.'s mother learned of the allegations and had a meeting with W.C. and Trujillo to find out what was going on. W.C. did not reveal any of the incidents because she was afraid of Trujillo and the threats he made.

{¶ 14} W.C. and her family eventually moved to another house on Wade Avenue. W.C. testified that at the second Wade Avenue house there was an occasion in 2007, when W.C. was 13-years old, where W.C.'s boyfriend was at the house and Trujillo allowed W.C. and the boyfriend to drink beer; one of W.C.'s uncles joined in as well. W.C. testified that she blacked out and when she woke up Trujillo was on top of her, raping her. She passed out again and when she woke up, she did not have a bra on, which was unusual because she always wore one to bed. W.C. testified that she knew something had happened to her. W.C. told her mother, who later took her to the hospital.

{¶ 15} Thereafter, W.C.'s mother kicked Trujillo out of the house. The mother testified that she broke up with Trujillo and asked him to leave because he was not paying the mortgage; she denied that the break-up had anything to do with W.C.'s allegations.

{¶ 16} A police report was also filed at that time in 2007. W.C. told the police that she had voluntarily taken Tylenol P.M.; she did not tell them that she had been drinking alcohol. The investigating detective did not pursue the matter. W.C. also told the treating nurse in the emergency room that she had taken Tylenol P.M. and

later woke up in the dark with Trujillo on top of her.  W.C. also told the nurse that she fell back asleep and when she woke up, she did not have her bra on.  W.C. declined a rape-kit examination.

{¶ 17} W.C. admitted that she has difficulty with placing events in time.  She explained that she has memories of incidents with Trujillo but is not always sure when exactly they occurred.

**Testimony of Victim A.O., Trujillo's Stepdaughter**

{¶ 18} A.O. explained that she has difficulty remembering the chronological order of Trujillo's abuse, both because of the passage of time and the associated trauma.  She has been diagnosed with post-traumatic stress disorder ("PTSD").

{¶ 19} A.O. testified that she did not know her biological father, who died when she was about two years old.  She believed that her mother and Trujillo began dating when she was a few months old.

{¶ 20} The first incident with Trujillo that A.O. testified to occurred when she was seven or eight years old (approximately in 2005) in a house they were living in on West 46th Street.  A.O. testified that she was on the toilet and Trujillo came in the bathroom and forced her to perform oral sex on him.  She described that Trujillo put his hands on the back of her head using so much force that his penis hit the back of her throat, causing her to bleed.  According to A.O., she spit blood in the sink, and Trujillo continued even after that.  A.O. testified about how scared she was.

{¶ 21} A.O. also testified about an incident where victim J.T. (Trujillo's biological daughter) saw A.O. being raped by Trujillo. A.O. could not recall if the rape was vaginal or anal.

{¶ 22} Further, A.O. described incidents that occurred at the second Wade Avenue house. In one incident, Trujillo pulled her in the hallway, put his hands on her neck, and forced her to perform oral sex on him. In another incident, Trujillo raped her in her mother's bedroom. A.O. also described an incident that occurred in a house on Vega Avenue, in which Trujillo bent her over a piece of furniture and raped her from behind. A.O. described that during the rape in the house on Vega Avenue, she and Trujillo heard a noise that caused Trujillo to become scared. It turned out that the noise they heard was a raccoon outside.

{¶ 23} The final incident A.O. described occurred at Trujillo's house, after his relationship with A.O.'s mother had ended. She testified that Trujillo's biological daughter, J.T., wanted to go to his house and she went with J.T. because she felt she needed to protect J.T. A.O. testified that she was sleeping on a mattress on the floor when Trujillo came in and forced her to have sex with him. A.O. was approximately ten years old at the time.

{¶ 24} A.O. testified that she had tried to tell her mother and grandmother about Trujillo's abuse, but they did not believe her. A.O. described that her mother would call a meeting, at which Trujillo would be present, to discuss A.O.'s allegations; Trujillo maintained that A.O. was lying and A.O. was scared of Trujillo.

A.O. also testified that she told a teacher about the abuse when she was in the fourth grade, but nothing happened as a result.

{¶ 25} A cousin of A.O.'s mother testified about a 2006 incident regarding A.O. At the time, A.O. was at the house of the cousin's grandmother and was sleeping. A.O. had a teddy bear and appeared to be having a nightmare. She was "humping" the teddy bear and was yelling "Jose [Trujillo], please stop." When A.O. woke up, she told the cousin and the cousin's grandmother about what had been happening. A.O. also told them that Trujillo had threatened to kill her and her sisters if she told anyone. The cousin and the cousin's grandmother reported what A.O. told them to children and family services.

{¶ 26} A.O. testified that she reported the abuse after she turned 18 with the help of an uncle. She met with a detective with the Cleveland police, who encouraged her to journal, and she followed his advice. Some of the entries had been triggered by a nightmare she had. A.O. testified that she did not journal all the occurrences of sexual abuse. A.O. further testified that, prior to meeting with the detective, she had been seeing a therapist who helped her construct a timeline of the abuse.

**Testimony Relative to Victim J.T., Trujillo's Biological Daughter**

{¶ 27} J.T. testified to two incidents when Trujillo attempted to rape her. The first incident occurred when she was five years old, and she was in the front room of their house. She testified that Trujillo bent her over the arm of an old sofa and tried to anally penetrate her; he was unsuccessful because she was "too tight."

{¶ 28} The second incident occurred when J.T. was seven years old and similar to the first, involved Trujillo bending her over furniture. This time they were in the basement and Trujillo put some type of lotion on J.T.'s anus before trying to penetrate her. This attempt also failed, but J.T. remembered the pressure as Trujillo tried.

{¶ 29} J.T. corroborated A.O.'s testimony about her (J.T.) seeing Trujillo rape A.O. J.T. testified that she felt she could not say anything to him or get him to stop and Trujillo told her to leave.

{¶ 30} J.T. testified that she and A.O. went to their grandmother to disclose Trujillo's abuse. Their grandmother brought Trujillo into the meeting. J.T. testified that she felt bad for Trujillo — he is her father, and he was crying. Because she felt bad for Trujillo, J.T. recanted the allegations and told her grandmother that A.O. was lying.

{¶ 31} J.T. admitted that she wanted to live with Trujillo, and she would often visit him. She also admitted that she told the police in 2007 that she had not been sexually abused, and that in a 2009 interview with a case worker from children and family services, she said that A.O. lies a lot.

**Testimony Relative to A.C., the Mother's Sister and Aunt to other Victims**

{¶ 32} A.C. was one of the maternal relatives who lived on the first floor of the first Wade Avenue house. A.C. testified that one day Trujillo told her to come to the second floor because he wanted to show her some new furniture the family

had got. A.C. went, and once there, Trujillo grabbed her waist and kissed her. According to A.C., Trujillo repeatedly asked her for sexual favors and harassed her to skip school to meet up with him. A.C. eventually gave in, and left school early to meet Trujillo; she testified that she knew she was meeting him for sex. She met him and they had sex in his car. A.C. was 13 years old at the time.

{¶ 33} A.C. testified to another incident at the first Wade Avenue house, when she was in an upstairs bedroom and Trujillo came in and said, "[Y]our sister is gone, give me some." A.C. said "no" but Trujillo got on top of her, held her hand down, and raped her.

{¶ 34} A.C. testified about another time Trujillo raped her. A.C. needed new clothing. Trujillo told A.C. that if she "gave him some," which she understood to mean sex, he would get her mother to take her shopping for new clothes. A.C. ignored Trujillo's request but her mother ended up taking her new clothes shopping. After, Trujillo asked A.C., "[S]o are you going to give me some?" A.C. was at the foot of her bed. Trujillo pushed her onto the bed and vaginally raped her.

**Testimony of the Investigating Detective**

{¶ 35} The investigating detective interviewed all four victims and all four identified Trujillo as their abuser. During W.C.'s interview, she did not mention that there had been any drinking, or Tylenol P.M., relative to the 2007 incident. W.C. also did not tell the detective that her boyfriend and uncle were present.

**The Defense Witnesses**

{¶ 36} The defense presented two witnesses: a former case worker who had been involved with the family and Trujillo. The former case worker testified that her involvement with the Trujillo family began in 2007. She interviewed the three sibling victims, their mother, and Trujillo in one-on-one interviews. W.C. was the only one of them who disclosed any abuse. As a result of those interviews, the case worker did not feel there was any need to remove the children, in part, because they were not struggling in school or displaying other trauma responses.

{¶ 37} The case worker interviewed the victims again in 2009. She testified that the victims were upset, but they did not want to talk to her. The case worker learned that the victims were upset because their mother came to school and told them not to say anything. The case worker talked to the three sibling victims again and A.O. and J.T. disclosed prior abuse by Trujillo. However, the case worker did not take action again.

{¶ 38} Trujillo testified that he was frequently in Puerto Rico during the times of the alleged crimes. He testified that he always cooperated with the police and children and family services and had never been told that he needed to modify his living arrangements vis-à-vis the victims. Trujillo testified that he maintained a relationship with J.T., his biological daughter, even after he and his ex-wife broke up. Trujillo denied all the allegations against him.

**Assignments of Error**

I.   The Sentencing Court erred in imposing Consecutive Sentences that were not supported by the record.

II.  Trial counsel prejudiced Mr. Trujillo by not objecting to the change in judge for Mr. Trujillo's sentencing.

III. The trial court erred in considering whether Mr. Trujillo displayed remorse as part of its sentencing decision.

IV.  The cumulative effect of multiple errors at sentencing, even if not enough individually, collectively rise to a denial of due process.

V.   Mr. Trujillo was denied a fair trial and his right to due process when the prosecution unfairly attacked the defense's case and called the defendant a "child rapist."

VI.  The State did not meet its burden of production as to Counts 4, 6, and 7, and the trial court erred in not granting the Rule 29 motion as to these counts.

VII. The verdict as to Counts 4, 6, and 7 were against the manifest weight of the evidence.

VIII. The trial court erred in not granting the Rule 29 motion as to the entire case.

IX.  The verdict is against the manifest weight of the evidence.

**Law and Analysis**

**Sentencing Issues**

{¶ 39} In his first four assignments of error, Trujillo challenges various aspects of the sentencing portion of the case and his actual sentence. We consider the challenges in turn.

{¶ 40} In his first assignment of error, Trujillo contends that the consecutive sentences were not supported by the record. Under R.C. 2929.14(C)(4), a trial court

may order prison terms to be served consecutively if it finds "the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Further, the court must also find any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 41} A defendant can challenge consecutive sentences on appeal in two ways. First, the defendant can argue that consecutive sentences are contrary to law because the court failed to make the findings required by R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(b); *State v. Reindl*, 8th Dist. Cuyahoga Nos. 109806, 109807, and 109808, 2021-Ohio-2586, ¶ 13; *State v. Nia*, 2014-Ohio-2527, 15 N.E.3d 892, ¶ 16 (8th Dist.). Second, the defendant can argue that the record "clearly and convincingly" does not support the court's findings made pursuant to R.C. 2929.14(C)(4). *See* R.C. 2953.08(G)(2)(a); *Reindl* at *id.* In addressing this

assignment of error, we review the record and consider whether it does not support the trial court's consecutive-sentence findings. *State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851, ¶ 5 (lead opinion) ("[T]he trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record."), ¶ 27 (Fischer, J., concurring in judgment only) ("[T]he appellate court could not find that the record does not support the trial court's consecutive-sentence findings * * *.") and ¶ 73 (Stewart, J., dissenting) ("De novo review of the record * * * is in fact what the statute requires.").

{¶ 42} The trial court here made the following findings in imposing consecutive sentences:

> Pursuant to [R.C.] 2929.14, this Court does find that a consecutive term is necessary to protect the public from future crime. It's also necessary to punish. It's not disproportionate to the 20 years of this conduct and the danger that pose to the public, and your history – I'm sorry, at least two of the offenses committed as part of one or more course of conduct was so great or unusual that no single prison term for any of the offenses adequately reflects the seriousness of your conduct.
>
> I'll note that your attorney mentioned that you don't have a long criminal history, but the criminal history within these 20 years as established by the verdict of the jury demonstrates that consecutive terms are necessary to protect the public from future crime by you. I'm running all terms consecutive to one another.

Tr. 2480-2481.

{¶ 43} According to Trujillo, although "threadbare," the trial court made the statutorily mandated findings for the imposition of consecutive terms. He contends, however, that the findings are not supported by the record.

{¶ 44} Upon review, we find that the trial court's findings were supported by the record. In regard to the trial court's finding under R.C. 2929.14(C)(4)(b), that "at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct," the record demonstrates that Trujillo committed repeated sexual assaults for years against child victims. All of the victims suffered trauma as a result of Trujillo's conduct; A.O. specifically was diagnosed with PTSD.

{¶ 45} The trial court's finding that the consecutive terms were necessary to protect the public and were not disproportionate to the danger Trujillo posed was also supported by the record. We acknowledge that the trial court stated that Trujillo carried on his abuse for 20 years, while the record indicates that it was an approximate 12-year span. Regardless of the trial court's statement, the victims' statements at the sentencing hearing demonstrated how the years of abuse, spanning over a decade, impacted, and continues to impact, their lives.

{¶ 46} Trujillo insinuates that the sentence is not supported by the record because it was more than the state offered in its plea bargain and recommended in its sentencing memorandum. We find no merit to Trujillo's insinuation.

{¶ 47} It is true that a trial court may not punish a defendant who exercises his or her right to a trial. *State v. O'Dell*, 45 Ohio St.3d 140, 147, 543 N.E.2d 1220

(1989). A trial court must avoid creating the appearance it enhanced a defendant's sentence because he or she elected to go to trial. *State v. Morris*, 159 Ohio App.3d 775, 2005-Ohio-962, 825 N.E.2d 637, ¶ 12 (4th Dist.). However, impropriety will not be presumed by the mere fact the sentence imposed after trial is greater than the sentence offered by the state at plea negotiations. *State v. Mayle*, 7th Dist. No. 04CA808, 2005-Ohio-1346, ¶ 46. Here, the sentencing judge was not the same judge who presided over the trial. Thus, the sentencing judge had no incentive whatsoever to "punish" Trujillo for exercising his right to a trial. And although the sentencing judge was not the judge who presided over the trial, the record reflects that she spent time reviewing the case, meeting with the attorneys, and considering relevant documents (such as the presentence-investigation report and sexual offender evaluation) prior to sentencing.

{¶ 48} Further, there are legitimate reasons why a trial court may sentence a defendant more harshly after a trial on the merits than it may have after a guilty plea. First, the United States Supreme Court has recognized the propriety of offering lenient sentences in exchange for a guilty plea. *See Corbitt v. New Jersey*, 439 U.S. 212, 221-224, 99 S.Ct. 492, 58 L.Ed.2d 466 (1978). The court has explained that it is proper to offer a more lenient sentence in exchange for a guilty plea because a defendant's acknowledgement of guilt has shown a willingness to assume responsibility for his or her conduct and has taken the first step toward rehabilitation. *Brady v. United States*, 397 U.S. 742, 753, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

{¶ 49} Second, a trial court knows more details about the facts of the case and its impact upon the victims after a trial on the merits than it would after a guilty plea. *United States v. Derrick*, 519 F.2d 1, 4 (6th Cir.1975). This "more real and accurate appraisal of the circumstances which brought the defendant to the bar of justice" will "almost inevitably * * * affect the judge's consideration of what penalty appears most appropriate." *Id.* Thus, the fact that the sentence imposed after trial is greater than the sentence the state offered to recommend in exchange for a guilty plea does not demonstrate that the trial court acted improperly.

{¶ 50} Similarly, although the issue of a state's recommended sentence most often arises in instances where there has been a guilty plea, there nonetheless is no requirement that a trial court follow the state's sentencing recommendation after a trial. The trial court is free to deviate from the state's recommendation, upward or downward, so long as the sentence is within the bounds of the law.

{¶ 51} We do note, however, that the sentencing entry states that Trujillo's consecutive terms amount to 81 years, when the actual number is 141 years. The entry states each count and the total sentence for each count. The total adds up to 141 years in prison consecutive to a life sentence. We remand for the issuance of a nunc pro entry stating the correct sentence.

{¶ 52} The first assignment of error is overruled.

{¶ 53} In his second assignment of error, Trujillo contends that his trial counsel was ineffective for not requesting that the case proceed before the original

judge for the purpose of sentencing since she was the judge who presided over the trial.

{¶ 54} In order to establish ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance was deficient and fell below an objective standard of reasonableness and (2) that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the trial would have been different. *State v. Jenkins*, 2018-Ohio-483, 106 N.E.3d 216, ¶ 28 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must satisfy both prongs of the test in order to prove ineffective assistance of counsel. *State v. Harris*, 8th Dist. Cuyahoga No. 109083, 2020-Ohio-4138, ¶ 28, citing *Strickland* at 687.

{¶ 55} Under Ohio law, "every properly licensed attorney is presumed to be competent." *State v. Knight*, 8th Dist. Cuyahoga No. 109302, 2021-Ohio-3674, ¶ 47, citing *State v. Black*, 2019-Ohio-4977, 149 N.E.3d 1132, ¶ 35 (8th Dist.), citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, when "evaluating counsel's performance on a claim of ineffective assistance counsel, the court must give great deference to counsel's performance and 'indulge a strong presumption' that counsel's performance 'falls within the wide range of reasonable professional assistance.'" *Knight* at *id.*, quoting *Strickland* at 689.

{¶ 56} Trujillo cites Crim.R. 25 in support of his contention that his counsel was ineffective for not seeking a transfer of the case to the original judge's docket. Crim.R. 25 governs "disability of a judge." It provides in part that, "[i]f for any

reason the judge before whom the defendant has been tried is unable to perform the duties of the court after a verdict or finding of guilt, another judge designated by the administrative judge * * * may perform those duties." Crim.R. 25(B). We note that the original judge was not disabled as to her judicial responsibilities. Rather, she no longer served in the seat with the docket of Trujillo's case; the new judge took over her docket.

{¶ 57} The rule further provides that if a new judge is assigned to the case post-trial and he or she "is satisfied that he [or she] cannot perform those duties because he [or she] did not preside at the trial, he [or she] may in his discretion grant a new trial." *Id*. There is no indication in the record that the new judge was unable to perform her duties as the sentencing judge. To the contrary, the record demonstrates that, prior to sentencing, she meet with counsel on "a few occasions," and reviewed documents including a presentence-investigation report, sentencing memorandums, and a sexual offender evaluation. *See, e.g., State v. Gonzalez*, 8th Dist. Cuyahoga No. 96102, 2011-Ohio-5253, ¶ 28 (visiting judge who was appointed for sentencing took appropriate steps to ensure the judge had sufficient information prior to sentencing defendant, by watching video of the subject robbery, reading the presentence-investigative report, and listening to the arguments of the prosecutor, defense counsel, and defendant prior to imposing sentence.).

{¶ 58} Further, we note that a judge is presumed to be unbiased and unprejudiced in the matters over which he or she presides. *In re Disqualification of Olivito*, 74 Ohio St.3d 1261, 1263, 657 N.E.2d 1361 (1994). Moreover, there was no

reasonable probability that a transfer motion would have been granted by the judge. Regardless, we work under a presumption that counsel's failure to seek a transfer of the case was a sound tactical decision that we will not second-guess. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶ 59} The second assignment of error is overruled.

{¶ 60} In his third assignment of error, Trujillo contends that the trial court improperly considered his lack of remorse in sentencing him. According to Trujillo, the trial court held his supposed lack of remorse against him in sentencing him.

{¶ 61} Defense counsel stated that Trujillo had a low recidivism score, to which the trial court responded: "[I]f a person expresses genuine remorse, that shows a lesser likelihood of recidivism. I haven't heard from your client, but I'll give whatever he says the weight that deserves." Under R.C. 2929.12(E)(5), the trial court was required to consider whether Trujillo displayed genuine remorse as a factor in assessing whether he was not likely to commit future crimes. Trujillo's counsel told the court that Trujillo maintained his innocence and asked the court not to hold that against him. There is nothing in the record indicating that the trial court improperly considered remorse; that is, there is no indication that the court used it as an aggravated factor in sentencing Trujillo.

{¶ 62} The third assignment of error is overruled.

{¶ 63} For his fourth assignment of error, Trujillo contends that the cumulative effect of the trial court's sentencing errors violated his due process rights.

**{¶ 64}** "The doctrine of cumulative error allows a conviction to be reversed if the cumulative effect of errors, deemed separately harmless, deprived the defendant of his right to a fair trial." *State v. Johnson*, 1st Dist. Hamilton No. C-170354, 2019-Ohio-3877, ¶ 57. "The doctrine of cumulative error is inapplicable where there are not multiple instances of harmless error." *Id.* Because we have not found multiple instances of error, the cumulative-error doctrine is inapplicable. Trujillo's fourth assignment of error is overruled.

**Prosecutorial Misconduct**

**{¶ 65}** In his fifth assignment of error, Trujillo contends that the assistant prosecutor engaged in misconduct during the trial. Specifically, Trujillo maintains that the state unfairly attacked the defense's case and inflamed the jury during its rebuttal closing argument.

**{¶ 66}** The test for prosecutorial misconduct is whether the prosecutor's "'remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.'" *State v. Hessler*, 90 Ohio St.3d 108, 125, 734 N.E.2d 1237 (2000), quoting *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "To demonstrate prejudice in this context, 'defendant must show that the improper remarks or questions were so prejudicial that the outcome of the trial would clearly have been otherwise had they not occurred.'" *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 105, quoting *State v. Collier*, 8th Dist. Cuyahoga No. 78960, 2001 Ohio App. LEXIS 4663 (Oct. 18, 2001).

{¶ 67} Prosecutorial misconduct is not grounds for reversal unless the defendant has been denied a fair trial due to the prosecutor's prejudicial remarks. *State v. Maurer*, 15 Ohio St.3d 239, 266, 473 N.E.2d 768 (1984). A reviewing court "will not deem a trial unfair if, in the context of the entire trial, it appears beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." *State v. Smith*, 12th Dist. Butler No. CA2007-05-133, 2008-Ohio-2499, ¶ 9. Further, in regard to closing remarks, the prosecution is entitled to a degree of latitude. *State v. Smith*, 14 Ohio St.3d 13, 13-14, 470 N.E.2d 883 (1984).

{¶ 68} Statements that may "inflame the passions and prejudice of the jury" are deemed improper because they wrongly "invite the jury to judge the case upon standards or grounds other than" those upon which it is obligated to decide the case, namely, the law and the evidence. *State v. Cunningham*, 178 Ohio App.3d 558, 2008-Ohio-5164, 899 N.E.2d 171, ¶ 27 (2d Dist.), citing *State v. Draughn*, 76 Ohio App.3d 664, 671, 602 N.E.2d 790 (5th Dist.1992). However, isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning. *State v. Hill*, 75 Ohio St 3d 195, 204, 661 N.E.2d 1068 (1996).

{¶ 69} Trujillo complains that the following statement by the assistant prosecutor during closing argument vilified defense counsel:

> So yes, there's no physical injuries and Dr. [defense counsel] wants you to believe that, well, if she's being raped, there's got to be physical injuries, right? She's not a doctor, all right?

> She is in no position to tell you that because W.C. 30 days later was not bruised or physically injured, she cannot be raped, all right? So put that where it belongs, not in the deliberation room.

Tr. 2276.

{¶ 70} Initially, we note that the defense did not object to the state's argument. Failure to object waives all but plain error. *State v. Davis*, 62 Ohio St.3d 326, 337, 581 N.E.2d 1362 (1991). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 71} The above-quoted statement made by the assistant prosecutor does not rise to the level of plain error. Although the assistant prosecutor was critical of defense counsel's argument, the assistant prosecutor merely argued to the jury why defense counsel's argument should not be persuasive and why the absence of certain evidence was not fatal to the state's case.

{¶ 72} The second statement made by the assistant prosecuting attorney that Trujillo contends constituted misconduct was as follows:

> Now I'm going to ask you today to take that power that you have under your oath and do what many have failed to do, to protect [the victims], to hold [Trujillo] accountable and by your verdict call him what he is, a child rapist and guilty.

Tr. 2295.

{¶ 73} Again, there was no objection and therefore our review is limited to plain error. In regard to the comment that people or the system failed the victims,

that comment was reasonably based on the evidence. Although police reports had been filed, the victims had been taken to the hospital, and one victim testified that she informed a teacher when she was in the fourth grade, no deeper investigation ensued until years later. And in regard to the assistant prosecuting attorney calling Trujillo a "child rapist," that isolated comment did not deprive him of a fair trial.

{¶ 74} The trial court instructed the jury that closing argument is just that — argument — and not evidence. Juries are presumed to follow the instructions they are given. *See State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 157. Indeed, the record demonstrates that the jury did follow the trial court's instructions and it was not inflamed by the assistant prosecuting attorney's statement. Specifically, during its deliberations, the jury posed three questions for the court to answer, and ultimately, they acquitted Trujillo on two counts.

{¶ 75} The fifth assignment of error is overruled.

{¶ 76} Trujillo poses a sufficiency challenge in his sixth assignment of error. He contends that the evidence was insufficient to support the rape counts relative to victim A.O. because it failed to establish that there was penetration. Further, Trujillo contends in his eighth assignment of error that the evidence was insufficient as to all the other remaining counts. We disagree with both contentions.

{¶ 77} The test for sufficiency of the evidence requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to

examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543, 2001-Ohio-112, 747 N.E.2d 765. "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 150 Ohio St. 3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 78} R.C. 2907.02(A)(1)(b), governing rape, provides, "[N]o person shall engage in sexual conduct with another, who is not the spouse of the offender, and whose age at the time of the sexual conduct was less than thirteen years of age." Sexual conduct is defined as "vaginal intercourse, anal intercourse, fellatio, and cunnilingus between persons." R.C. 2907.01(A).

{¶ 79} According to Trujillo, A.O.'s testimony was insufficient to establish rape because she did not specify whether the penetration was vaginal or anal. This court has held that that is inconsequential, stating, "[W]e can identify no legal rule which entitles a criminal defendant to know exactly which of his criminal acts led the jury to a finding of guilt. * * * Either vaginal or anal penetration would have satisfied the elements of 'sexual conduct' necessary for a rape conviction * * *." *State v. Fulkerson*, 8th Dist. Cuyahoga No. 83566, 2004-Ohio-3114, ¶ 30; *see also State v. Shafer*, 8th Dist. Cuyahoga No. 79758, 2002-Ohio-6632, ¶ 29 ("The [rape] statute simply does not require, as appellant asserts, that a specific finding be made as to

the type of rape. Consequently, it was not error for the trial court to refuse to instruct the jury [t]hat it must make such a specific finding.").

{¶ 80} In all three incidents that formed the rape charges relative to A.O., A.O. testified that Trujillo penetrated her. That testimony was sufficient to sustain the rape convictions. The sixth assignment of error is overruled.

{¶ 81} In regard to the other counts, Trujillo contends that the evidence was insufficient because (1) the family frequently moved and therefore it was difficult for the victims to tell where certain incidents occurred and (2) the victims were children at the time of the acts and struggled with their memories.

{¶ 82} Trujillo's contention mainly relates to the victims' credibility. Credibility issues go to manifest weight, not sufficiency, of the evidence. *State v. Hale*, 8th Dist. Cuyahoga No. 107646, 2019-Ohio-3276, ¶ 87. To the extent that Trujillo's contention relates to the timeframe of when the incidents occurred, the timeframe of the offenses was not an essential element of the crimes charged and, therefore, was not subject to consideration during a motion to dismiss. *State v. Sellards*, 17 Ohio St.3d 169, 171, 478 N.E.2d 781 (1985). "The State's only responsibility is to present proof of offenses alleged in the indictment, reasonably within the time frame alleged." *State v. Bogan*, 8th Dist. Cuyahoga No. 84468, 2005-Ohio-3412, ¶ 10, citing *State v. Shafer*, 8th Dist. Cuyahoga No. 79758, 2002-Ohio-6632, ¶ 17-18.

{¶ 83} In light of the above, the eighth assignment of error is overruled.

{¶ 84} Relative to the counts regarding the rape of A.O., Trujillo contends in his seventh assignment of error that the convictions are against the manifest weight of the evidence. In his ninth assignment of error, Trujillo contends that the remaining convictions are against the manifest weight of the evidence.

{¶ 85} "To evaluate a claim that a jury verdict is against the manifest weight of the evidence, we review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that we must reverse the conviction and order a new trial." *State v. Wilks*, 154 Ohio St.3d 359, 2018-Ohio-1562, 114 N.E.3d 1092, ¶ 168, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Reversing a conviction based upon the weight of the evidence should occur "'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 86} Trujillo's weight-of-the-evidence claim relative to A.O. is based on her lack of specificity as to whether the rape was vaginal or anal. First, as already discussed, there is no requirement for that specificity. Second, to the extent that the lack of specificity on that point relates to her credibility, the factfinder was in the best position to weigh that. This weighing of witness credibility is best left to the factfinder, who observed the demeanor of the witnesses and has a more holistic view of the evidence. *State v. Thompson*, 127 Ohio App.3d 511, 529, 713 N.E.2d 456 (8th

Dist.1998) ("The fact-finder * * * occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.").

{¶ 87} We do not find that the jury lost its way and created a manifest injustice by believing A.O. about the rapes. A.O. testified about the sexual assaults Trujillo inflicted on her. She also added other details about the incidents, such as the time they heard a noise, which they discovered was a raccoon, lending support to her credibility.

{¶ 88} The seventh assignment of error is overruled.

{¶ 89} As relates to the remaining counts, Trujillo contends that the convictions were against the manifest weight of the evidence because of (1) the inconsistencies of witnesses' testimony, (2) issues with the victims' memories, and (3) the absence of physical signs of abuse. Again, the inconsistencies went to credibility, which was for the factfinder to determine. Defense counsel vigorously cross-examined the victims on inconsistencies and the jury did not find reasonable doubt. We find nothing incredible about its decision.

{¶ 90} Further, while the victims' memory issues may have influenced their ability to recall all specific details, it did not prevent them from testifying to the

sexual abuse Trujillo inflicted on them. And regarding the lack of physical evidence, "[t]here is no requirement that a rape victim's testimony be corroborated as a condition precedent to conviction." *State v. Blachowski*, 8th Dist. Cuyahoga No. 107616, 2019-Ohio-2331, ¶ 41, citing *State v. Williams*, 8th Dist. Cuyahoga No. 92714, 2010-Ohio-70, ¶ 32.

{¶ 91} Upon review, this is not the exceptional case that requires reversal of the convictions. Therefore, the ninth assignment of error is overruled.

{¶ 92} Convictions affirmed; case remanded for nunc pro tunc correction of sentencing entry.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., and
SEAN C. GALLAGHER, J., CONCUR