[Cite as *State v. Billips*, 2025-Ohio-108.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                              :

    Plaintiff-Appellee,               :

                                    No. 113663

    v.                                       :

LEROY ANTHONY BILLIPS,                      :

    Defendant-Appellant.              :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 16, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-672546-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jeffrey Schnatter and Carson M. Strang, Assistant Prosecuting Attorneys, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Francis Cavallo, Assistant Public Defender, *for appellant*.

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant Leroy Billips appeals his convictions after a jury convicted him in the drive-by shooting death of 13-year-old "M.T." For the reasons that follow, we affirm.

**Procedural History and Facts**

{¶ 2} In March 2022, Billips was bound over from juvenile court and charged with the following crimes: Count 1 – aggravated murder, a felony of an unspecified degree in violation of R.C. 2903.01(A); Count 2 – murder, a felony of an unspecified degree in violation of R.C. 2903.02(A); Count 3 – murder, a felony of an unspecified degree in violation of R.C. 2903.02(B); Count 4 – felonious assault, a felony of the second degree in violation of R.C. 2903.11(A)(1); Count 5 – felonious assault, a felony of the second degree in violation of R.C. 2903.11(A)(2); Count 6 – improperly discharging into habitation a felony of the second degree, in violation of R.C. 2923.161(A)(1); Count 7 – discharge of firearm on or near prohibited premises, a felony of the first degree in violation of R.C. 2923.162(A)(3); Count 8 – tampering with evidence, a felony of the third degree in violation of R.C. 2921.12(A)(1); and Count 9 – tampering with evidence, a felony of the third degree in violation of R.C. 2921.12(A)(1). Counts 1 – 7 had one-, three-, and five-year firearm specifications.

{¶ 3} Billips's adult codefendant, Duane Jackson ("Jackson") was charged with the same offenses. *See State v. Jackson*, 8th Dist. Cuyahoga No. 113594.

{¶ 4} The matter proceeded to a joint jury trial at which the following pertinent evidence was presented.

{¶ 5} On December 11, 2021, Jessica Adams ("Adams") was in her Euclid, Ohio home with her mother and her five-year-old son. Just after 2:30 p.m. the victim, M.T., arrived at Adams's house on a bicycle and knocked on the door looking

for Adams's daughter, who was not home. M.T. descended the porch steps when seconds later a black vehicle pulled up, someone fired several shots from the passenger side window, and the car sped off. M.T. was hit and eventually succumbed from his wounds.

{¶ 6} Adams heard multiple gunshots. She grabbed her son from the couch where he was sitting and yanked him on the floor. One of the bullets struck the couch and almost struck her son. She called 911; the 911 call came in at 2:38 p.m.

{¶ 7} Euclid Police Officer David Maslyk responded to the scene. Officer Maslyk observed M.T. lying on the ground in Adams's driveway. The officer observed several shell casings and defects in the grass in the yard near M.T.'s bicycle that appeared to be bullet impacts. As to Adams's house, Maslyk observed bullet defects through the windows and to the couch and refrigerator. The coroner would later determine that M.T. suffered two gunshot wounds — one to the chest and one to the buttocks — and the cause of death was the gunshot wound to the chest. The coroner ruled the death a homicide.

{¶ 8} Officer Michael Roulan also responded to the scene and was able to secure the video captured on Adams's Ring doorbell camera. The Ring camera video showed M.T. approach Adams's house on his bicycle. It also showed a black Ford Escape slow down at the house, fire several shots, and quickly accelerate away. The detective concluded that the shots were fired from the front passenger window and noted distinctive white straps hanging from the back of the vehicle.

{¶ 9} Detective Michael Caruso investigated the shooting. According to Detective Caruso, he obtained a license plate number on a suspect vehicle by observing camera footage from a nearby street camera. The black Ford Escape was seen on the camera footage approximately five to seven minutes before the shooting. The car was registered to codefendant Jackson's mother, Traci Daniel ("Daniel").

{¶ 10} A few hours after the shooting, Daniel reported that her black Ford Escape had been stolen. According to the report, two men carjacked Jackson at gunpoint in another area of the city around 12:00 or 12:30 p.m. that day, approximately two hours before the car was allegedly used in the shooting. Police determined, however, that the vehicle was parked near Jackson's residence shortly after the shooting and less than an hour before the report was made. The police also determined through traffic cameras that the same vehicle was seen traveling towards the area of the homicide shortly before it occurred, and the car was not seen traveling to the area where Jackson reported he had been carjacked.

{¶ 11} Two days after the homicide, Detective Caruso received an image of a black Ford Escape and saw that the vehicle was parked approximately 1,800 feet from Jackson's residence. Other detectives responded to where the car was parked and reported that the license plate had been removed from the vehicle. The police impounded the car.

{¶ 12} Detective David Carpenter also assisted in the investigation. Detective Carpenter determined from the Ring camera video that the suspect vehicle was an early to mid-2000s black Ford Escape with two distinctive white straps hanging

from the back of the vehicle. Detective Carpenter observed that the passenger window was down when the shots were fired and that seven to eight shots were fired. The detective received video from a nearby Sunoco gas station showing the suspect vehicle pulling into the parking lot a few minutes prior to the shooting at 2:32 p.m. The driver of the vehicle pulled up to one of the gas pumps, remained at the gas pump for "maybe a minute or so," and then drove off. No one was seen getting in or out of the vehicle.

{¶ 13} After pulling out of the gas station, the driver of the suspect vehicle traveled directly to the scene of the shooting. Detective Carpenter testified that a photograph of the suspect vehicle showed the vehicle after the shooting traveling towards the entrance ramp of Interstate 90 going westbound towards Cleveland first to Billips's house and then to Jackson's house.

{¶ 14} At the time of the shooting M.T. was staying with Jordin Jackson ("Jordin"). In the weeks prior to the shooting M.T. shared with Jordin that he was fearful because M.T. thought a black truck, maybe a Tahoe, was following him and shooting at him. In another conversation, M.T. told Jordin that he was supposed to sell cannabis for an older male, but instead he had smoked it all. Jordin thought maybe the older male was upset with M.T. and sought to retaliate against him for failing to sell the cannabis.

{¶ 15} DNA was collected from the black Ford Escape and analyzed. The analysis showed that Billips's DNA was found on the gearshift and an armrest (the record does not indicate which armrest). Jackson's DNA was found on the front

passenger's side head and seat cover and on two cigarette butts police seized from the vehicle.

{¶ 16} Detective Caruso interviewed Jackson on December 16, 2021, five days after the shooting. Jackson surrendered his cell phone, which police took into evidence. Detective Caruso located a series of photographs on the phone that had been taken in Jackson's driveway on the day of the homicide. The photos showed Jackson, Billips, and another minor, "J.S." In the photos, Jackson had what appears to be a handgun with an extended magazine in his waistband. The metadata associated with the series of photographs indicated that they were taken between 3:35 p.m. and 3:39 p.m. on December 11, 2021, approximately one hour after the homicide, but before Jackson reported the subject vehicle stolen.

{¶ 17} Detective Caruso observed that Jackson was wearing a single dark-colored glove on his right hand and a ski mask. In one of the photographs, Jackson is seated in the front passenger seat of the black Ford Escape. In some of the photos, Billips is wearing a hooded sweatshirt and a ski mask and is holding a blue cell phone.

{¶ 18} On February 1, 2021, Detective Caruso executed a search warrant at Billips's residence, where he seized a blue cell phone matching the one in the pictures found on Jackson's phone. Police also seized a 9 mm bullet and a .40 caliber handgun; it was determined the handgun was not the weapon used in the shooting. After the search, Detective Caruso interviewed Billips. During the interview the

detective observed numerous tattoos on Billips, including one that said, "[J.L.] on my Heart."

{¶ 19} Police were familiar with a homicide victim named J.L., a middle schooler who was killed in a November 2020 shooting, which occurred down the street from Adams's house. Just prior to J.L.'s shooting, J.L.'s mother, brother, and Billips went to the police stations to report J.L. missing. Shortly after the shooting, J.L.'s mother called the police to express her belief that Adams's teenage son, Andre Wilson ("Andre"), was directly involved in J.L.'s death. The police discovered that Andre was with J.L. when he was shot, and the two youths had a stolen firearm that they were looking to sell on the streets. The consensus among people in the community was that Andre set J.L. up to be robbed and that robbery resulted in J.L.'s death; in other words, Andre was blamed for J.L.'s death.

{¶ 20} During Billips's interview, Billips said he knew Jackson from football but claimed he had not spoken to Jackson in a long time and had not ridden in Jackson's black Ford Escape since "probably 2020." Billips denied knowing anything about M.T.'s death. He also denied knowing M.T. or A.W. but admitted to knowing J.L.

{¶ 21} J.L.'s obituary, which was entered into evidence, listed Billips as a "special friend." When police searched Billips's phone they discovered a series of lyrics that discussed committing a drive-by shooting to avenge J.L.'s death.

{¶ 22} Daniel, Jackson's mother, testified that her son regularly drove her black Ford Escape and confirmed that the car could be identified by the white straps

hanging from the back. According to Daniel, Jackson suffered a football injury around the time of the shooting and, although he had access to his mother's car, he was not driving because his leg was in a boot. She further confirmed that Jackson was the only person who used her vehicle, and he had access to it on the day M.T. was killed.

{¶ 23} Cell phone data placed phones belonging to Billips, Jackson, and J.S. at the scene of the drive-by shooting. FBI Special Agent Brian Lacy testified that he is a member of the cellular analysis survey team that tracks historical cell site locations, which allows him to use cell phone records to estimate where a phone is located at a particular time. He cross-referenced times and locations when the black Ford Escape was scanned by license plate readers with the locations of the three suspects' phones. Agent Lacy testified that he was able to locate all three phones together in the same location as the suspect vehicle. During the time the suspect vehicle was driving to the location of the shooting, Billips's phone registered two voice transactions and had an open data session that lasted from 1:49 p.m. to 2:34 p.m. The cell towers, which this data session utilized, placed Billips's phone with the other two phones and near the homicide scene approximately two minutes before the shooting occurred. Agent Lacy concluded that Billips's phone was in the area of the homicide based on the data handoff between the cell phone towers. After the shooting, the three phones were located as they traveled to Billips's and then Jackson's residences.

{¶ 24} Crime analyst Matthew Seabold confirmed the FBI's findings. Using specialized software, Seabold created a map of where the three cell phones traveled during the time surrounding the shooting. Starting at 12:57 p.m. and ending at 3:16 p.m., the phones of all three suspects traveled from the area of Jackson's house, to where the shooting took place, and then to the area where Billips lived.

{¶ 25} Other witnesses, including other police officers and science analysts also testified; their testimony was substantially the same.

{¶ 26} The jury convicted Billips of Counts 3 – 7 and Count 9. The jury further convicted Billips of the one- and three-year firearm specifications attendant to Counts 3 – 7. The jury acquitted Billips of Count 1 and was unable to reach a verdict as to Count 2; the trial court dismissed Count 2 without prejudice. The court sentenced Billips to a total of 32 years to life in prison.

**Assignments of Error**

{¶ 27} Billips filed a delayed notice of appeal, which this court accepted, and raises the following assignments of error for our review:

I. There was insufficient evidence produced at trial to support a finding of guilt on all counts.

II. The jury lost their way by finding the defendant guilty against the manifest weight of the evidence.

III. The trial court erred by permitting hearsay statements to be admitted into evidence that fell under no recognized exception, all of which were inflammatory and unfairly prejudicial and violated appellant's sixth amendment right to confrontation.

IV. Appellant was denied his right to the effective assistance of counsel in his trial under the Sixth Amendment, as well as the corollary provision of the Ohio Constitution.

V. The cumulative errors committed during the trial deprived the appellant of a fair trial.

VI. The trial court erred by sentencing appellant without giving meaningful consideration to his age at the time of the offense, as required by the Eighth Amendment.

VII. The trial court erred when it ordered consecutive sentences without support in the record for the requisite statutory findings under R.C. 2953.08(G)(2) and R.C. 2929.14(C)(4).

**Law and Analysis**

**Sufficiency of the Evidence**

{¶ 28} In the first assignment of error, Billips argues that there was insufficient evidence to support his conviction. When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The court examines all the evidence admitted at trial to determine whether such evidence, if believed, would convince a reasonable factfinder of the defendant's guilt beyond a reasonable doubt. *State v. Williams*, 2023-Ohio-2296, ¶ 81 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law. *Thompkins* at 386.

{¶ 29} Proof of guilt may be supported "by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value." *State v. Wilborn*, 2024-Ohio-5003, ¶ 38 (8th Dist.), citing *State v. Rodano*, 2017-Ohio-1034 (8th Dist.). "Although circumstantial evidence and direct evidence have obvious differences, those differences are irrelevant to the probative value of the evidence, and circumstantial evidence carries the same weight as direct evidence." *Wilborn* at *id.*, citing *State v. Cassano*, 2012-Ohio-4047, ¶ 13 (8th Dist.).

{¶ 30} Billips contends that the State presented insufficient evidence connecting him to the shooting. At trial, the State theorized that Billups, Jackson, and J.S. were complicit in the shooting. Ohio's complicity statute, R.C. 2923.03(A), provides, in relevant part that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall . . . aid or abet another in committing the offense." The statute does not define "aid or abet," but the Ohio Supreme Court has stated that to aid or abet is "'[t]o assist or facilitate the commission of a crime, or to promote its accomplishment.'" *Wilborn* at ¶ 43, quoting *State v. Johnson*, 93 Ohio St.3d 240, 243 (2001). A person aids or abets another when he or she "supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime and shares the criminal intent of the principal." *Wilborn* at *id.* The criminal intent may be inferred from the circumstances surrounding the crime. *Wilborn* at *id.*, citing *State v. Seals*, 2015-Ohio-517 (8th Dist.).

{¶ 31} R.C. 2923.03(F) provides that anyone who violates the complicity statute shall be prosecuted and punished as if he or she were a principal offender. An offender need not be charged under R.C. 2923.03 but instead may be charged with complicity in terms of the principal offense. "'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.'" *State v. Johnson*, 93 Ohio St.3d 240, 245 (2001), quoting *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist. 1971). Therefore, the State was not required to explicitly allege complicity when it charged Billips. *See Wilborn* at ¶ 45, citing *State v. Skatzes*, 2004-Ohio-6391.

{¶ 32} Aiding and abetting may be shown by both direct and circumstantial evidence, and participation may be inferred from presence, companionship and conduct before and after the offense is committed. *Wilborn* at *id.*, citing *Johnson* at 245. The mere presence of an accused at the scene of a crime is insufficient to prove, in and of itself, that the accused was an aider and abettor. *Wilborn* at ¶ 44, citing *State v. Widner*, 69 Ohio St.2d 267 (1982). In this case, however, the evidence presented was that Billips was not merely an innocent bystander to the events that led to his indictment.

{¶ 33} Billips argues that the evidence was insufficient to show that he was involved in the shooting because the State impermissibly relied on "inference stacking." Inference stacking occurs "when an inference, which forms the basis of a conviction, is drawn solely from another inference and that inference is not supported by any additional facts or from inferences drawn from other established

facts." *State v. Armstrong*, 2016-Ohio-7841, ¶ 23 (11th Dist.), citing *State v. Payne*, 2014-Ohio-4304 (11th Dist.).  The record in this case does not reflect impermissible inference stacking.

{¶ 34} Billips was convicted of felony murder, under R.C. 2903.02(B).  Ohio's felony-murder-statute provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." R.C. 2903.02(B).  Felony murder does not require the State prove a mens rea element specific to the death of the victim. *State v. Owens*, 2020-Ohio-4616, ¶ 10, citing *State v. Fry*, 2010-Ohio-1017, ¶ 43 ("R.C. 2903.02(B), the felony-murder statute, does not contain a mens rea component.").  In other words, the State does not have to prove that Billips intended to kill the victim.  The State, however, must prove the elements of the qualifying predicate offense — including any mens rea element specific to that criminal act. *Id.*

{¶ 35} Billips was convicted of felony murder with the predicate offenses of felonious assault and improperly discharging into a habitation.  Both felonious assault and improperly discharging into a habitation have a mens rea of "knowingly."  "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22 (B).

{¶ 36} After viewing the evidence in a light most favorable to the prosecution, we find sufficient evidence of Billips's involvement in the drive-by shooting that resulted in M.T.'s death. Cell phone records, as well as traffic cameras and license plate readers, established that phones belonging to Billips, Jackson, and J.S. were together in the black Ford Escape as it travelled from Jackson's home in Cleveland to Adams's home in Euclid at the time of the murder. As shown by phone location data, Billips was at Jackson's home with Jackson and J.S. before the shooting. The three of them travelled in Jackson's vehicle to a gas station near Adams's street, where they briefly paused. The vehicle then travelled to Adams's house, slowed down, and one of the occupants of the car fired numerous shots toward the house, hitting M.T. and narrowly missing Adams's young son. The vehicle then travelled back to Cleveland, first to Billips's and then to Jackson's houses.

{¶ 37} About an hour after the shooting, Billips, Jackson, and J.S. posed for a series of photographs in front of the black Ford Escape. In the pictures, Jackson has a firearm in his pants and Billips is holding a blue phone identical to the one police seized from his house.

{¶ 38} During Billips's police interview, he told detectives that he had not seen Jackson in quite some time, for four or five months, and had not been in his vehicle in over a year. Further, detectives noticed that all the data in Billips's phone for a one-month period centering on the date of the homicide had been deleted. Detectives were able to confirm that the content was deleted when they requested the cell records from Billips's provider, which showed multiple calls on the day of

the homicide including calls to Jackson. After Jackson was arrested, Billips googled Jackson's arrest at least 90 times.

{¶ 39} Additionally, even though Billips told police that he had not been in the black Ford Escape for more than a year prior to the shooting, his DNA was found on the gearshift and front armrest of the vehicle. Billips argues that the presence of his DNA only established that he was in the vehicle at some time before the incident but did not show that he was in the car at the time of the shooting. A reasonable person examining this piece of evidence in the light most favorable to the State, however, could conclude that Billips was in the driver's seat at the time of the shooting and Jackson was the shooter because Billips was the major contributor to the DNA found on the gear shift, while Jackson was excluded and Jackson was the major contributor of the DNA found on the front passenger seat cover, while Billips was excluded. Taken together, the photographs, cell phone tracking and data, and Billips's DNA each independently support the conclusion that Billips was inside of the vehicle at the time of the shooting.

{¶ 40} Considering the above, we find that the evidence, taken in a light most favorable to the State, supports Billips's convictions.

{¶ 41} This first assignment of error is overruled.

**Manifest Weight of the Evidence**

{¶ 42} In the second assignment of error, Billips argues that his convictions were against the manifest weight of the evidence.

{¶ 43} In contrast to a challenge based on sufficiency of the evidence, the "'[w]eight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics but depends on its effect in inducing belief.'" *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387. In order to evaluate whether a judgment or verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving conflicts in the evidence and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Jordan*, 2023-Ohio-3800, ¶ 17, citing *Thompkins* and *State v. Martin*, 20 Ohio App.3d 172 (1st Dist. 1983). The Ohio Supreme Court has held that "[a] manifest-weight challenge should be sustained 'only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *Martin* at 175; *State v. Price*, 2024-Ohio-5598, ¶ 50 (8th Dist.).

{¶ 44} Based on our review of the record, we cannot conclude that this is the exceptional case that warrants a new trial.

{¶ 45} In addition to the arguments made under the second assignment of error, Billips argues that the lyrics found in his phone were simply a childish musing and should not have been considered as proof of his involvement in the shooting.

However, the lyrics found on Billips's phone discussed exacting revenge for J.L.'s murder by committing a drive-by shooting.

{¶ 46} The State presented evidence that the black Ford Escape used in the shooting belonged to Billips's friend Jackson. Although Billips tried to distance himself from Jackson, Billips's phone was tracked with Jackson's cell phone and vehicle, which travelled to Billips's residence directly after the shooting. The vehicle then travelled to Jackson's residence where the three suspects posed in front of the Jackson's vehicle with ski masks, a firearm, and Billips's phone. Jackson was injured at the time and was on crutches with a boot on his foot. Billips's DNA was found on the gear shift and the front seat arm rest; thus, the jury could conclude that Billips drove the car to and from the shooting.

{¶ 47} Considering the above, we find that this is not the exceptional case where the jury clearly lost its way; Billips's convictions are not against the manifest weight of the evidence.

{¶ 48} The second assignment of error is overruled.

**Hearsay Statements**

{¶ 49} In the third assignment of error, Billips argues that the trial court erred when it allowed hearsay statements into evidence and the offending statements violated his right to confrontation. Specifically, Billips argues that the trial court improperly admitted testimony from Jordin Jackson, whom M.T. was living with at the time of the shooting, about things that M.T. told him. The State argues that the statements are nontestimonial and admissible under Evid.R. 803.

{¶ 50} It is well-settled that the admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. As the gatekeeper of the evidence, the trial court "must be cognizant of the evidence the state is attempting to admit into evidence. If the state fails to comport with the basic requirements under the law, the trial court is obligated to exclude such evidence, even if no objection is raised." *State v. Walker*, 2022-Ohio-1238, ¶ 32 (8th Dist.).

{¶ 51} The Sixth Amendment's Confrontation Clause only applies to testimonial statements and does not apply to nontestimonial statements. *State v. Zadar*, 2011-Ohio-1060, ¶ 36-39 (8th Dist.), citing *State v. Siler*, 2007-Ohio-5637. If a statement is testimonial, then the confrontation clause requires a showing of both the declarant's unavailability and the defendant's opportunity to have previously cross-examined the declarant. *Id.* If the statement is nontestimonial, it is merely subject to the regular admissibility requirements of the hearsay rules. *Id.* Nevertheless, hearsay testimony is inadmissible unless the testimony falls within one of the recognized exceptions to the hearsay rule. Evid.R. 802; *State v. Williams*, 2024-Ohio-838, ¶ 24 (8th Dist.). "Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered into evidence to prove the truth of the matter asserted." Evid.R. 801(C).

{¶ 52} In order to determine whether a statement to a non-law enforcement person is testimonial, the "objective witness" test applies. *State v. Stahl*, 2006-Ohio-5482, ¶ 36, citing *Crawford v. Washington,* 541 U.S. 36 (2004). This test requires the court to determine whether an objective witness would have reasonably believed that his or her statement would be available for use at a later trial. *Stahl* at *id*. The focus is on the expectation of the declarant at the time of making the statement. *Id*. at paragraph two of the syllabus.

{¶ 53} The statements M.T. made to Jordin are nontestimonial, because an objective witness under the same circumstances would not have reasonably believed his statements would be used later for trial. Thus, there is no Confrontation Clause issue regarding the admission of the statements. Because we find that the statements are nontestimonial, they are admissible if they fit within a hearsay exception.

{¶ 54} Testimony that a victim was fearful falls under a hearsay exception and is properly admitted. *State v. Tibbetts*, 92 Ohio St.3d 146, 158 (2001), citing *State v. Apanovitch*, 33 Ohio St.3d 19, 22 (1987). In this case, M.T.'s statement that he was fearful falls under Evid.R. 803(3), which allows introduction of a "statement of the declarant's then existing state of mind, emotion, sensation, or physical condition." Therefore, M.T.'s statement that he feared for his life was admissible.

{¶ 55} The state-of-mind exception does not permit witnesses to testify to the declarant's statements as to *why* he or she held a particular state of mind. *Tibbetts* at 159; *State v. Thomas*, 2018-Ohio-2841, ¶ 30-32 (8th Dist.). Consequently, the

statements that a black vehicle was following, and had shot at, M.T. were hearsay and should have been held to be inadmissible.

{¶ 56} Since those statements were improperly admitted, we must determine whether the introduction of that testimony constitutes harmless error. Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." A judgment of conviction shall not be reversed unless the accused was prejudiced by the admission of the evidence in question. R.C. 2945.83.

{¶ 57} The Ohio Supreme Court set forth a three-part analysis to determine whether the introduction of improper evidence affected the substantial rights of a defendant, thereby requiring a new trial, or whether the admission of that evidence constitutes harmless error under Civ.R. 52(A):

> First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict. [*State v. Morris*, 2014-Ohio-5052] at ¶ 25, 27. Second, it must be determined whether the error was not harmless beyond a reasonable doubt. *Id.* at ¶ 28. Lastly, once the prejudicial evidence is excised, the remaining evidence is weighed to determine whether it establishes the defendant's guilt beyond a reasonable doubt. *Id.* at ¶ 29, 33.

*State v. Harris*, 2015-Ohio-166, ¶ 37; *see also State v. Boaston*, 2020-Ohio-1061, ¶ 63. The State bears the burden of demonstrating that the error did not affect the defendant's substantial rights. *State v. Johnson*, 2023-Ohio-445, ¶ 74 (8th Dist.), citing *State v. Graham*, 2020-Ohio-6700; *State v. Perry*, 2004-Ohio-297, ¶ 15. "Error in the admission of evidence is harmless beyond a reasonable doubt when 'there is [no] reasonable possibility that the improperly admitted evidence

contributed to the conviction.'" *State v. Jones*, 2023-Ohio-380, ¶ 141 (8th Dist.), citing *State v. McKelton*, 2016-Ohio-5735.

{¶ 58} After reviewing the entire record, we find no reasonable possibility that the improperly admitted testimony contributed to Billips's conviction. The Ring camera evidence unequivocally demonstrates that M.T. was gunned down by someone in a black Ford Escape. The jury acquitted Billips of Count 1 — aggravated murder, which means the jury did not believe that Billips killed M.T. with prior calculation and design. *See* R.C. 2903.01. The victim's statements to Jordin regarding a black vehicle that may have been following and shooting at him, which could have supported a theory that M.T. was the intended target, were therefore inconsequential. Thus, we find the trial court committed harmless error when it admitted those statements.

{¶ 59} Accordingly, Billips's third assignment of error is overruled.

**Effective Assistance of Trial Counsel**

{¶ 60} In the fourth assignment of error, Billips argues that he was denied the effective assistance of trial counsel.

{¶ 61} Our review of counsel's performance is highly deferential. *State v. Korecky*, 2020-Ohio-797, ¶ 20 (8th Dist.). We presume licensed attorneys are competent; therefore, the party claiming ineffective assistance of counsel bears the burden of proving counsel's ineffectiveness. *Id.*, citing *State v. Smith*, 17 Ohio St.3d 98 (1985).

{¶ 62} In order to show ineffective assistance of counsel, a defendant must demonstrate trial counsel's performance was both below an objective standard of reasonable representation and that he or she suffered prejudiced by counsel's deficient performance. *State v. McGee*, 2022-Ohio-2045, ¶ 32 (8th Dist.), citing *State v. Drummond*, 2006-Ohio-5084; *Strickland v. Washington*, 466 U.S. 668 (1984). Prejudice is established if the defendant can demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 63} Billips argues that his trial counsel was ineffective because the attorney failed to have sidebar conferences memorialized by the court reporter for appellate review.

{¶ 64} Billips did not object during trial to the "off-the-record" sidebar conferences; therefore, he has waived all but plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Crim.R. 52(B). "[I]n order to prevail under a plain error analysis, the appellant bears the burden of demonstrating that the outcome of the proceedings clearly would have been different but for the error." *State v. Wagner*, 2024-Ohio-5394, ¶ 14 (8th Dist.), citing *State v. Harris*, 2012-Ohio-802 (8th Dist.); *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus.

{¶ 65} Billips does not point to where in the record these off-the-record sidebars allegedly occurred, and it is not the duty of this court to make Billips's

argument for him. *See* App.R. 12 ("The court may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A).").

{¶ 66} Billips has also not explained how he was prejudiced by the unrecorded sidebar conversations. In *State v. Drummond*, 2006-Ohio-5084, ¶ 220, the appellant argued that his counsel was ineffective for failing to object to unrecorded sidebar conferences. The *Drummond* Court held that the appellant failed to show prejudice because there was no evidence presented about what allegedly occurred during the sidebars. *Id.* at ¶ 22, citing *State v. Tyler*, 50 Ohio St.3d 24 (1990). "'Acts of omissions by trial counsel which cannot be shown to have been prejudicial may not be characterized as ineffective assistance.'" *State v. Davie*, 80 Ohio St.3d 311, 332 (1997).

{¶ 67} Accordingly, the fourth assignment of error is overruled.

**Cumulative Errors**

{¶ 68} In the fifth assignment of error, Billips argues that the cumulative errors committed during the trial deprived him of a fair trial.

{¶ 69} Under the doctrine of cumulative error, a conviction will be reversed when the cumulative effect of error during a trial deprives a defendant of a fair trial even though each of the alleged instances of error do not individually constitute cause for reversal. *State v. DeMarco*, 31 Ohio St.3d 191, 196-197 (1987). Because

this court has found Billips's arguments regarding his other assignments of error unpersuasive, the cumulative-error doctrine does not apply.

{¶ 70} The fifth assignment of error is overruled.

**Sentence**

{¶ 71} In the sixth and seventh assignments of error, Billips challenges his sentence.

{¶ 72} This court reviews felony sentences pursuant to the standard set forth in R.C. 2953.08(G)(2), which authorizes appellate court to increase, reduce, modify, or vacate and remand a felony sentence in two circumstances:  (1) the reviewing court clearly and convincingly finds that record does not support findings that the sentencing court is required to make; and (2) the sentence is otherwise contrary to law.  *State v. Spencer*, 2023-Ohio-3359, ¶ 20 (8th Dist.).

{¶ 73} First, Billips argues that the trial court did not consider he was a juvenile at the time of the offense.  R.C. 2929.19(B)(1)(b) mandates consideration of age, but it does not require the trial court to make specific findings.  *Spencer* at ¶ 24. This court reviews the trial court's compliance with R.C. 2929.19(B)(1)(b) consistent with its evaluation of whether a trial court complied with the mandates of the sentencing considerations contained within R.C. 2929.11 and 2929.12.   *Id*. Consideration of the principals and purposes of sentencing is presumed unless an appellant affirmatively shows otherwise.  *State v. Phillips*, 2021-Ohio-2772, ¶ 8 (8th Dist.), citing *State v. Wright*, 2018-Ohio-965 (8th Dist.).   A trial court's statement in its journal entry that it considered all required factors prior to imposing

a prison sentence is sufficient to satisfy its obligation under R.C. 2929.11 and 2929.12. *Phillips* at *id.*, citing *Wright*. Here, the trial court stated in its sentencing journal entry that it had considered all required factors of the law. Additionally, during the sentencing hearing the trial court stated on the record that it considered Billips's age as it was required to do as a matter of law. Thus, Billips has not shown that the trial court did not consider his age, and his sentence is not contrary to law in that respect.

{¶ 74} Next, Billips argues that the trial court erred when it ordered consecutive sentences without support in the record for the requisite statutory findings under R.C. 2953.08(G)(2) and 2929.14(C)(4).

{¶ 75} To impose consecutive sentences, the trial court must find that

(1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public and (3) at least one of the following applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

{¶ 76} Billips does not claim that the trial court failed to make the requisite statutory findings, and our review of the record shows that the trial court indeed made all required findings. Billips's contention is that the record did not support imposition of consecutive sentences.

{¶ 77} R.C. 2953.08(G)(2), which guides our review of consecutive-felony sentences, "compels appellate courts to modify or vacate sentences if they find by clear and convincing evidence that the record does not support any relevant findings under . . . (C)(4) of section 2929.14[.]" *State v. Marcum*, 2016-Ohio-1002, ¶ 22; *see also State v. Jones*, 2020-Ohio-6729, ¶ 28; *State v. Roberts*, 2017-Ohio-9014, ¶ 10 (8th Dist.).

{¶ 78} In addressing this assignment of error, we review the record and consider whether it clearly and convincingly does not support the trial court's consecutive-sentence findings. *State v. Trujillo*, 2023-Ohio-4125, ¶ 41 (8th Dist.), citing *State v. Gwynne*, 2023-Ohio-3851.

{¶ 79} At Billips's sentencing hearing, the trial court stated that it had considered all relevant information, including the principles and purposes of felony sentencing and the appropriate recidivism and seriousness factors. The court noted that the death affected not only the victim's family, but also Billips, his family, and the community as a whole. As to consecutive sentences the trial court stated:

> [T]he imposition of a consecutive sentence is appropriate in this matter. I find specifically that it's necessary to protect the public and

to punish this offender. It is not disproportionate to what occurred in this matter. And that the harm is so great or unusual, taking the life of a 13-year-old child, that a single term does not adequately reflect the seriousness of the conduct, and each bit of this conduct added up to a loss of life.

{¶ 80} On this record, we are not able to say that the record clearly and convincingly does not support the trial court's findings. The record supported the trial court's findings, namely, that consecutive sentences were necessary to punish Billips and to protect the public from future crime by him, were not disproportionate to his conduct; and further, that consecutive sentences were necessary given the loss of a young life, and that his offenses were part of a course of conduct that added up to that loss.

{¶ 81} Accordingly, Billips's sixth and seventh assignments of error are overruled.

{¶ 82} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

MARY J. BOYLE, P.J., and
SEAN C. GALLAGHER, J., CONCUR