[Cite as *State v. Gibson*, 2025-Ohio-543.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                       No. 113542

    v.                               :

PERNELL GIBSON,                         :

    Defendant-Appellant.         :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART
                    AND REMANDED
**RELEASED AND JOURNALIZED:** February 20, 2025

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-668580-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Luke Habermehl and Lorraine Debose, Assistant Prosecuting Attorneys, *for appellee.*

Flowers & Grube, Louis E. Grube, and Kendra N. Davitt, *for appellant.*

EMANUELLA D. GROVES, P.J.:

{¶ 1} Defendant-appellant Pernell Gibson ("Gibson") appeals his conviction for aggravated murder and other charges. For the reasons that follow,

we affirm the convictions in part, reverse in part, and remand for the trial court to correct the jail-time credit in its sentencing entry.

**Factual and Procedural History**

{¶ 2} In the early morning hours of January 16, 2021, a woman walking home from the store discovered a dead body in the parking lot at the Lonnie Burton Rec Center in Cleveland, Ohio. The woman called the police, and an investigation began. The following morning, Alphonso Davis ("Alphonso") went to the police station and reported that he believed the deceased woman might be his mother, Francina Davis ("Ms. Davis"). Alphonso informed the police that his mother had gone out on a date with Gibson and that was the last time he saw her.

{¶ 3} Real-time traffic cameras captured a view of the parking lot and showed a vehicle pull into the lot and then leave, dumping something in the place Ms. Davis' body was later found. The car, a Chevrolet Equinox, was observed driving through the city of Cleveland to East Cleveland. Later, when the police went to find Gibson at his parents' East Cleveland home, they found his car, a Chevrolet Equinox, parked in the driveway. Police towed the vehicle and obtained a search warrant for the car and the home Gibson shared with his mother and stepfather. Gibson, however, fled the area and was arrested over a year later in Oklahoma City, Oklahoma, with a fake Kansas identification card.

{¶ 4} On March 14, 2022, Gibson was charged with aggravated murder, two counts of murder, two counts of felonious assault, two counts of having weapons while under disability, and one count of tampering with evidence. One- and three-

year firearm specifications were attached to the aggravated-murder, murder, and felonious-assault charges, and a one-year firearm specification was attached to the tampering-with-evidence charge.

{¶ 5} Gibson was ultimately found guilty on all charges. After merging counts, Gibson was sentenced on one count each of aggravated murder, having weapons while under disability, and tampering with evidence, two three-year and a one-year gun specification, for an aggregate term of life in prison with the possibility of parole after 37 years. At sentencing, the trial court noted Gibson was entitled to 610 days of jail-time credit, however, the sentencing entry calculated the time as 245 days of jail-time credit.

{¶ 6} Gibson appeals and raises the following assignments of error for our review.

### Assignment of Error No. 1

The trial court erred by denying defendant Pernell Gibson's Crim.R. 29(A) motion for judgment of acquittal as to tampering with evidence.

### Assignment of Error No. 2

The trial court erred or committed plain error by admitting substantial evidence of other wrongs and bad acts in violation of Evid.R. 403(A) and (404(B).

### Assignment of Error No. 3

The trial court erred by failing to grant the proper measure of jail-time credit.

## Other-Acts Evidence

{¶ 7} For ease of analysis, we will address the assignments of error out of order. In the second assignment of error, Gibson argues that the trial court erred when it allowed the introduction of other-acts evidence in violation of Evid.R. 404(B) and 403(A). Gibson alleges that the State's case was premised on characterizing his relationship with Ms. Davis as toxic, that there was a history of volatile and violent interactions between the two, and that history suggests Gibson acted in conformity with that violent, volatile history.

**Standard of Review**

{¶ 8} A trial court has broad discretion to determine the admissibility of evidence "so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake Cty.*, 58 Ohio St.3d 269, 271 (1991). Accordingly, the admission of relevant evidence, as defined in Evid.R. 401, rests within the sound discretion of the trial court and will not be overruled by a court of appeals absent an abuse of discretion. *Id.*, citing *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus; *State v. Finnerty*, 45 Ohio St.3d 104, 107 (1989). A trial court abuses its discretion when it acts unreasonably, arbitrarily, or unconscionably. *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**Analysis**

{¶ 9} Looking at character evidence, the State may not introduce evidence of a person's character, generally, to prove that the defendant acted in conformity with that character on a particular occasion. *State v. Knuff*, 2024-Ohio-902, ¶ 115,

citing Evid.R. 404(A). A complementary rule forbids the admission of specific conduct, such as "any other crime, wrong, or act . . . to prove the person's character in order to show that on a particular occasion the person acted in accordance with the character." Evid.R. 404(B)(1). However, a party may introduce evidence of other crimes, wrongs, or acts for the purpose of proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Evid.R. 404(B)(2).

{¶ 10} Pursuant to Evid.R. 404(B), the State submitted a notice of intent to introduce other-acts evidence regarding prior threats against the victim with a firearm. The State argued that the proposed testimony would show that Gibson had inflicted harm on the victim previously and that the method he used showed that he intended to inflict harm on Ms. Davis, knowingly, and that his actions were not a mistake or an accident. Additionally, the State alleged that the prior threats assisted in proving motive and identity.

{¶ 11} The State introduced the following testimony at trial.

{¶ 12} Alfonso, Ms. Davis' son, described the relationship between Gibson and his mother as volatile, sometimes violent. He was not sure who started the altercations, but Gibson had been violent. On one night, Alfonso saw Gibson pull a gun. He did not describe the surrounding circumstances. Tr. 578-580.

{¶ 13} Theresa Davis ("Theresa") and her sister, Ms. Davis, were very close. They talked every day and would hang out with one another frequently. She claimed Gibson and Ms. Davis were dating and that they had been seeing one another for

about two years. Theresa often spent time with the couple where they would drink, talk, and have outings on various holidays like the Fourth of July. Tr. 594-595. Theresa described the relationship between Gibson and Ms. Davis as "toxic." Tr. 596. Theresa testified when altercations occurred, alcohol was frequently involved, and during one incident around October 2020, she heard Gibson threaten to kill Ms. Davis with a gun. She had seen him with a black 9 mm gun on one occasion. Tr. 596. In a second incident that same month, Theresa was on the phone with Ms. Davis, who told her that Gibson hit her in the mouth and shot at her. Tr. 597-598. Theresa described her sister's demeanor over the phone as crying, irate, hurt, lost, and scared. Tr. 598. Theresa picked up her sister at the hospital, noting Ms. Davis had stitches to her face. On cross-examination, Theresa acknowledged that her sister was violent, too. Tr. 602.

{¶ 14} Moses McClendon ("Mr. McClendon"), Gibson's stepfather, was aware that Gibson was dating someone in 2020 that he had met at work. He later identified a picture of Ms. Davis as the woman his stepson was seeing. Mr. McClendon described the relationship as "toxic" because they were fighting and arguing all of the time. Tr. 672-673. The fights were both physical and verbal. Tr. 673. One of the fights that occurred at Mr. McClendon's home was physical and they broke a window. Tr. 674. Mr. McClendon did not describe who broke the window, but suggested it takes two to fight.

{¶ 15} In addition to the foregoing, the State introduced testimony that three police reports were filed with East Cleveland Police where the parties were Gibson

and Ms. Davis.  The reports were not introduced into evidence, nor did any witness testify to the contents of the reports.

{¶ 16} In determining whether other acts should be admissible, a court must consider

> (1) whether the other-acts evidence is relevant under Evid.R. 401, i.e., whether it tends to make the existence of any fact of consequence to the determination of the action more or less probable than it would be without the evidence, (2) whether the evidence is presented to prove a person's character to show conduct in conformity therewith, or whether it is presented for a legitimate other purpose, and (3) whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, Evid.R. 403. However, "the rule affords broad discretion to the trial judge regarding the admission of other acts evidence."

*State v. Harris*, 2024-Ohio-2707, ¶ 29 (8th Dist.), quoting *State v. Tench*, 2018-Ohio-5205, ¶ 139, citing *State v. Williams*, 2012-Ohio-5695, ¶ 17, 20.

{¶ 17} When a court errs in introducing other-acts evidence, that error "'is harmless when there is no reasonable possibility that the testimony contributed to the accused's conviction.'" *Tench* at ¶ 177, quoting *State v. Lytle*, 48 Ohio St.2d 391, (1976), paragraph three of the syllabus.  Such an admission "may be deemed harmless error on review when, after the tainted evidence is removed, the remaining evidence [of guilt] is overwhelming." *Id.*, quoting *State v. Morris*, 2014-Ohio-5052, ¶ 32.

{¶ 18} For the reasons that follow, the record establishes that the trial court did not err, accordingly, we need not consider whether the introduction was harmless.  Gibson argues that the evidence in question was inadmissible because the

State had, and did introduce, a slew of evidence that linked him to the crime. There was video evidence of a vehicle matching the description of Gibson's vehicle, down to damage on one of the quarter panels, parking where Ms. Davis' body was later discovered. There was no body in that location prior to the car stopping but an object can be seen in that location after the car leaves. Video also shows the car going into East Cleveland, where Gibson resides. Ms. Davis was shot with a .45-caliber bullet. Police found, incident to search warrants, a .45-caliber casing in Gibson's car, and a box for a .45-caliber gun and .45-caliber ammunition in a safe in Gibson's home. Evidence gathered from Gibson's car included Ms. Davis' blood and brain matter indicating she was shot in or next to Gibson's car. Finally, Gibson fled Cleveland shortly after the incident and was not located until a year later.

{¶ 19} Nevertheless, there remained a question of what happened in the car. Gibson's attorneys highlighted evidence that Ms. Davis's blood-alcohol level was four times the legal limit and that alcohol is a suppressant. Tr. 635-636. They also highlighted that Ms. Davis had gunshot residue on her hands, which could indicate that she discharged a weapon. Tr. 638. Finally, they asked Ms. Davis' family members who testified whether she was suicidal. Tr. 582, 603. In addition, Oklahoma City police interviewed Gibson upon his arrest. A portion of his interview was played for the jury in which Gibson claimed that he was never in a relationship with Ms. Davis and that she was a stalker who was harassing him.

{¶ 20} This line of questioning and Gibson's statement to police that he was not in a relationship with Ms. Davis put motive and identity in issue, because it

suggested that Ms. Davis committed suicide and was not the victim of a homicide at the hands of Gibson. The Ohio Supreme Court has held that evidence of a tumultuous relationship between a defendant and victim in an incident that took place just weeks before the murder tends to show motive, absence of accident, and suggestive intent. *State v. Nields*, 93 Ohio St.3d 6, 22 (2001), *see also State v. Thompson*, 2003-Ohio-3939, ¶ 24 (8th Dist.) (finding domestic violence evidence is relevant to identity when the defendant denies being the perpetrator making identity a material issue when the assault is temporally connected to the alleged crime).

{¶ 21} The testimony established that Gibson perpetrated an assault several weeks before the murder. Theresa testified that after the incident, she advised her sister to stay away from Gibson, but her sister began to hide the relationship from her. Given the facts of this case, the nature of the couple's relationship was relevant and so were the prior incidents of violence to establish that this was not a suicide and that Gibson had the requisite intent to cause harm.

{¶ 22} Accordingly, the trial court did not abuse its discretion in admitting the evidence, and the second assignment of error is overruled.

**Insufficient Evidence of Tampering with Evidence**

{¶ 23} In his first assignment of error, Gibson argues that the trial court erred when it denied his motion for acquittal under Crim.R. 29 for the charge of tampering with evidence.

{¶ 24} A Crim.R. 29 motion challenges the sufficiency of the evidence and the same standard of review is applied as when we address the sufficiency of the evidence. *State v. Haskins*, 2024-Ohio-5908, ¶ 36 (8th Dist.). In a sufficiency challenge a court must determine whether the State met its burden of production at trial and consider not the credibility of the evidence but whether, if credible, the evidence presented would sustain a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). The relevant question is whether after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991), citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "When analyzing a claim of sufficiency of the evidence, a reviewing court is neither permitted to assess the credibility of witnesses nor otherwise weigh the evidence." *State v. Young*, 2022-Ohio-3132, ¶ 47 (8th Dist.), citing *In re A.W.*, 2016-Ohio-7297, ¶ 33 (8th Dist.). The reviewing court assumes that witnesses testified truthfully and evaluates whether that testimony, along with any other direct or circumstantial evidence presented at trial, satisfies each element of the offense. *Cleveland v. Clark*, 2024-Ohio-4491, ¶ 39 (8th Dist.), citing *In re D.R.S.*, 2016-Ohio-3262, ¶ 23 (8th Dist.), and *State v. Wells*, 2021-Ohio-2585, ¶ 25 (8th Dist.).

{¶ 25} In order to establish tampering with evidence, the State needed to establish that Gibson, "knowing that an official proceeding or investigation is in progress or is about to be or likely to be institute[ed], alter[ed], destroy[ed], conceal[ed] or remov[ed] any record, document or thing, with purpose to impair its

value or availability as evidence in such proceeding or investigation." R.C. 2921.12(A)(1).

{¶ 26} There are three elements to the offense: (1) the knowledge that an official proceeding or investigation in progress or likely to be instituted; (2) the alteration, destruction, concealment, or removal of the potential evidence; and (3) a purpose to impair the potential evidence's availability or value in such proceeding or investigation. *State v. Fletcher*, 2024-Ohio-5117, ¶ 50 (2d Dist.).

{¶ 27} Knowledge that an investigation is likely can be inferred when a defendant commits a crime that is likely to be reported. *State v. Martin*, 2017-Ohio-7556, ¶ 118. "Homicides are highly likely to be discovered and investigated. Certainly, a jury may reasonably believe that a murderer knows this." *Id.* Here, the murder was committed in a public parking lot, near several parked cars, and the body was dumped in that same area. Gibson had to know the body would be discovered and that an investigation was likely.

{¶ 28} Next, the State must establish that the defendant altered, destroyed, concealed, or removed potential evidence. Gibson focuses on the gun and, rightfully, argues that the failure of law enforcement to find the gun when a shooting has occurred is insufficient evidence, by itself, to show that the defendant altered, destroyed, concealed, or removed it. *State v. Sims*, 2009-Ohio-5875 (2d Dist.). However, the gun was not the only evidence of the crime. There was also evidence that Gibson had attempted to clean up after the crime. A towel discovered in a

garbage can in Gibson's backyard was found to contain Ms. Davis' DNA. Additionally, the police found a bottle of bleach and/or cleaning fluid in the car.

{¶ 29} The police were able to secure Gibson's car very quickly after the crime, so although there remained a substantial amount of evidence in the car, i.e. blood and other bodily fluids, there was evidence that Gibson attempted to clean up after the crime. Accordingly, the State met its burden of production with respect to the crime of tampering with evidence.

{¶ 30} However, there is no evidence that Gibson had the gun on him when he committed the act of tampering. In order to establish the gun specification, the State needed to present evidence that Gibson had a gun on or about his person or in his control at the time of the crime. The record is devoid of that testimony. Accordingly, the State did not meet its burden of production for the gun specification.

{¶ 31} Accordingly, we agree with Gibson that there was insufficient evidence to establish that he had a gun on or about his person to support the conviction for the one-year firearm specification attached to the tampering-with-evidence charge.

{¶ 32} Accordingly, the first assignment of error is sustained as to the gun specification but overruled as to the conviction for tampering with evidence.

Jail-Time Credit

{¶ 33} With respect to the third assignment of error, the defense argues and the State concedes that the trial court erred in its calculation of jail-time credit. The

docket reflects that Gibson was arrested on March 7, 2022, and remained in jail throughout the date of sentencing on November 7, 2023, a total of 610 days, excluding the date of sentencing. Accordingly, we sustain the third assignment of error and remand the case to the trial court to issue a nunc pro tunc entry correcting that error.

{¶ 34} Judgment affirmed in part, reversed in part, case remanded for the trial court to amend its jail-time credit calculation.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, PRESIDING JUDGE

MICHAEL JOHN RYAN, J., CONCURS;
MARY J. BOYLE, J., CONCURS IN PART AND DISSENTS IN PART

MARY J. BOYLE, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 35} I respectfully dissent from the majority's resolution of the first assignment of error. Although the majority upheld the underlying offense of the tampering-with-evidence charge based on Gibson's act of cleaning up his car but found insufficient evidence to support a firearm specification, I would find that there

was sufficient evidence that Gibson tampered with the firearm. I believe that the State met its burden of production and presented sufficient evidence that Gibson had a firearm on or about his person while in the act of tampering.

{¶ 36} When reviewing sufficiency of the evidence, this court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *See State v. Leonar*d, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, (1991), paragraph two of the syllabus. The court examines all the evidence admitted at trial to determine whether such evidence, if believed, would convince a reasonable factfinder of the defendant's guilt beyond a reasonable doubt. *State v. Williams,* 2023-Ohio-2296, ¶ 81 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d at 390. Whether the evidence is legally sufficient to support a verdict is a question of law. *State v. Billips,* 2025-Ohio-108 (8th Dist.), citing *Thompkins* at 386.

{¶ 37} Tampering with evidence is defined in R.C. 2921.12(A)(1), which states:

> (A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
>
> (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]

"There are three elements of this offense: (1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction,

concealment, or removal of the potential evidence, and (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley*, 2014-Ohio-2139, ¶ 11. I agree with the majority in holding that the State satisfied its burden of production at trial in regard to Gibson's conviction for tampering with evidence.

{¶ 38} As noted by the majority, Gibson murdered Davis by shooting her one time in the head with a .45 caliber firearm while inside his vehicle and dumped her body in a parking lot.[1] Subsequently, police searched Gibson's vehicle, home, and yard. In Gibson's car, investigators found a spent .45 caliber shell casing, bleach bottle, cleaning fluid bottle, and WD-40. In his bedroom, investigators found a gun safe containing an empty gun box, .45 caliber ammunition in his room, and a towel containing Davis's DNA. In his yard, investigators found a towel containing Davis's DNA in his garbage bin.

{¶ 39} It is my view that this is sufficient to support the finding that Gibson concealed or destroyed the gun used in the commission of the aggravated murder and the accompanying firearm specification. I disagree with the majority's assertion that the State's only evidence of tampering with the firearm was law enforcement's failure to find it. I find the majority's reliance in *State v. Sims* misplaced. In *Sims,* the defendant was in a vehicle with two other men where they followed an individual and he shot a firearm at the other individual's car, unknowingly hitting a pedestrian.

---

[1] Gibson was found guilty of aggravated murder in violation of R.C. 2903.01(A), which provides that "no person shall purposely, and with prior calculation and design, cause the death of another[.]"

2009-Ohio-5875 (2d Dist.) The only evidence of tampering with the firearm was a confession that he disassembled the firearm and disposed of it. *Id.* The court concluded that the confession alone was insufficient because there was no evidence that defendant took the firearm from the van to impair the investigation and law enforcement did not search for the firearm. *Id.* Unlike *Sims,* Gibson acted alone, with prior calculation and design, and committed aggravated murder by shooting Davis in his vehicle. There is no dispute that Gibson attempted to clean his vehicle or that investigators searched Gibson's house, vehicle, and backyard attempting to locate the firearm. Investigators, however, only located the gun box Gibson stored the firearm in prior to the aggravated murder. I believe our case is similar to the facts *State v. Gordon,* 2018-Ohio-2292, (8th Dist.), where defendant's conviction for tampering was upheld after he burned his shirt and discarded his firearm shortly after committing murder. Gibson's act of cleaning the vehicle and throwing away towels containing the victim's DNA in addition to his gun not being in his car or bedroom's gun safe supports an inference that Gibson tampered with the firearm.

{¶ 40} Thus, based on the foregoing, it is reasonable to conclude Gibson intended to impair the investigation when he removed the firearm from his vehicle and home after being on notice that an investigation would be conducted. Because I find there is sufficient evidence Gibson had a firearm on or about his person while in the act of tampering with evidence, I would uphold the one-year firearm specification conviction accompanying the offense of tampering with evidence. I would overrule Gibson's first assignment of error and affirm his convictions.